## A03A2491. HOLCIM (US), INC. v. AMDG, INC.
(596 SE2d 197)

RUFFIN, Presiding Judge.

AMDG, Inc. leased property from Holcim (US), Inc. pursuant to a sublease agreement. The parties dispute whether, under the sublease, AMDG is bound by certain terms in the master lease. In June 2002, AMDG filed a claim for declaratory relief and an injunction, seeking to clarify its obligations under its sublease. Holcim counterclaimed, seeking payment of sums allegedly due under the lease.[1] The parties filed cross-motions for summary judgment, and the trial court granted AMDG's motion and denied Holcim's. Holcim appeals, contending that the trial court erred in: (1) failing to enforce the lease as written, (2) granting summary judgment to AMDG, and (3) denying its motion for summary judgment. For reasons that follow, we affirm in part and reverse in part.

A trial court properly grants summary judgment when there is no issue of material fact and the record demonstrates that the moving party is entitled to judgment as a matter of law.[2] "On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact."[3]

Viewed in this light, the record establishes that, in July 2000, Holcim leased property from Village Properties, Inc. (the "master lease"). Under the heading "Rent and Additional Charges," the master lease provided that Holcim must pay a "Minimum Rent" of $14.75 per square foot. The agreement also required Holcim to pay interest and "Operating Expenses," including "[a] pro-rata share of taxes, hazard insurance, utilities, and other operating expenses."

---

[1] Both parties also sought payment of attorney fees.
[2] See *Columbus Clinic v. Liss*, 252 Ga. App. 559, 562 (556 SE2d 215) (2001).
[3] Id.

In March 2002, Holcim entered a sublease agreement with AMDG. The sublease provided, in pertinent part, that it

> is subject to all of the terms and conditions of the Master Lease and Sublessee hereby accepts, assumes and agrees to perform all of the obligations of Sublessor as Sublessee under the Master Lease to the extent such obligations are applicable to the Sublease Premises and all of the terms and conditions of the Master Lease are incorporated herein as terms and conditions of this Sublease. . . . *In the event of any conflict or inconsistency between the incorporated terms of the Master Lease and the terms of the Sublease which are set forth in full, the terms of the sublease which are set forth in full shall prevail to the extent of any such inconsistency.*[4]

The sublease further provided under the heading "Rental" that, over the course of 44 months, AMDG would pay rent in the amount of $12.25 per square foot for the first 12 months; $12.62 per square foot for the second 12 months; $13 per square foot for the third 12 months; and $13.39 per square foot for the remaining months. The sublease was silent on the issue of operating expenses.

According to Holcim, because the master lease is expressly incorporated in the sublease, AMDG is required to pay operating expenses. AMDG disagrees, however, asserting that its payment obligation under the sublease is inconsistent with the payment obligation under the master lease, and thus the sublease controls. The trial court found in favor of AMDG. Specifically, the trial court found that

> [t]he language in the Sublease is clear: in the event of any conflict or inconsistency[,] the terms of the [Sublease] control. The Sublease is silent on the issue of operating expenses. This silence is neither conflicting nor inconsistent with the Master Lease, which clearly specifies that Holcim is responsible for the expenses. The Sublease does not say that any issue not covered in the Sublease is governed by the Master Lease; rather, it merely sets up the governing document for inconsistencies.

We disagree with the trial court.

---

[4] (Emphasis supplied.)

Construction of a contract, at the outset, is a question of law for the court.[5] And such construction involves three steps:

> [f]irst, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[6]

Contrary to the trial court's ruling, the sublease does not merely set forth the mechanism for governing inconsistencies between the sublease and the master lease. Rather, the sublease expressly incorporates the terms of the master lease to the extent such terms are not inconsistent. Thus, the primary issue is whether the payment obligation under the sublease is inconsistent with the requirement under the master lease for payment of operating expenses.

In resolving this issue, we note that "[t]he cardinal rule of contract construction is to ascertain the intention of the parties."[7] In so doing, we consider the whole instrument.[8] And, where an ambiguity exists in the written terms, parol evidence may be used in ascertaining that intent.[9] In this case, both parties *vigorously* contest the issue of their intent with regard to AMDG's payment obligation. However, the trial court refused to consider parol evidence of intent, concluding that the agreement was unambiguous.

"Ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and [it] also signifies . . . doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations."[10]

Here, we find that the sublease, when read in connection with the master lease, is ambiguous because it is open to various interpretations. On the one hand, the contract could be interpreted as: the sublease specifies the full amount that AMDG is obligated to pay, and to the extent the master lease states otherwise, it is inconsistent,

---

[5] See *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

[6] *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

[7] (Punctuation omitted.) *Nguyen v. Talisman Roswell, LLC*, 262 Ga. App. 480, 482 (585 SE2d 911) (2003).

[8] See id.

[9] See *Gans v. Ga. Fed. Sav. &c. Assn.*, 179 Ga. App. 660, 663 (2) (347 SE2d 615) (1986).

[10] (Punctuation omitted.) *Early v. Kent*, 215 Ga. 49, 50 (1) (108 SE2d 708) (1959).

and the sublease controls. On the other hand, however, the contract could be interpreted as: the rent due is a separate obligation from payment of maintenance, in which case the sublease is silent on the issue, and the terms of the master lease prevail.

Moreover, the statutory rules of contract construction do not aid us in resolving this ambiguity.[11] Holcim argues that OCGA § 13-2-2 (5) governs. This rule provides that "[i]f the construction [of the contract] is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred."[12] As AMDG has undertaken the obligation to lease the premises, Holcim reasons that it should be required, as a matter of law, to pay operating expenses as required under the master lease. Again, however, the cardinal rule of contract construction is to ascertain the intent of the parties. And here the intent of the parties is unclear. As this Court recently noted, " '[i]t would be inequitable to carry a contract into effect where the court is left to ascertain the intention of the parties by mere guess or conjecture, because it might be guilty of erroneously decreeing what the parties never intended or contemplated.' "[13]

Because questions of fact remain as to the parties' intent, the trial court erred in granting AMDG's motion for summary judgment. However, given this factual dispute, the trial court did not err in denying Holcim's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Barnes and Miller, JJ., concur. Smith, C. J., disqualified.*

DECIDED FEBRUARY 24, 2004.

*King & Spalding, Scott A. Greer, Gregory K. Smith, Peter M. Crofton*, for appellant.

*Foltz Martin, Halsey G. Knapp, Jr., Mary L. Walker*, for appellee.

---

[11] As noted by Holcim, two rules of construction are expressly inapplicable. The master lease specifies that it "shall be construed without regard to any presumption or other rule requiring construction against the [drafter]." The lease also states that "[t]he table of contents, captions, headings and titles . . . are solely for convenience of reference and shall not affect its interpretation."

[12] OCGA § 13-2-2 (5).

[13] *Owenby v. Holley*, 256 Ga. App. 13, 16 (2) (567 SE2d 351) (2002) (summary judgment inappropriate in specific enforcement action where intent unclear).