A07A0403. PEACHES LAND TRUST et al. v. LUMPKIN COUNTY SCHOOL BOARD.
(648 SE2d 464)

PHIPPS, Judge.

Peaches Land Trust and its trustee, Tom Jarrard, (collectively, "the Trust") sued the Lumpkin County School Board ("the School Board") for breach of a real estate sales contract or, alternatively, specific performance of the contract. The School Board subsequently moved for summary judgment on all claims. The trial court granted the motion, and the Trust appeals. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when no issues of material fact remain and the movant is entitled to judgment as a matter of law.[1] We review the trial court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party.[2]

So viewed, the record shows that Lowell Dunn and his wife are the beneficiaries of the Trust, which was created to acquire real property at the direction of and within parameters provided by Dunn. In 2004, Dunn saw a "for sale" sign on property owned by the School Board and instructed trustee Jarrard to purchase it. Dunn did not walk the property or ask to see it, and Jarrard never viewed it.

---

[1] See *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818 (596 SE2d 197) (2004).

[2] See id.

Jarrard contacted Dewey Moye, the Lumpkin County School Superintendent, to inquire about the property. Moye told Jarrard that the School Board had approximately 2.72 acres for sale, as described in a plat Moye faxed to Jarrard. The plat reflected a survey completed in 1955 showing the total area of the School Board's property to be 3.00 acres, which included a 0.28 acre street right-of-way, leaving a net area of 2.72 acres. Moye insisted on using the 1955 plat for the legal description in the sales contract.

On November 11, 2004, the Trust and the School Board executed a real estate sales agreement through which the Trust agreed to purchase from the School Board for $600,000 "[a]pproximately (more or less) 2.72 ACRES, CITY OF DAHLONEGA; PARKS/CHESTATEE STREETS." The contract incorporated by reference the 1955 property plat, and the School Board agreed to "furnish good, marketable fee simple title by general warranty deed." Prior to the closing, however, Jarrard discovered that the School Board did not own a portion of land reflected on the plat known as the Community House property.

The record shows that the School Board owned the Community House property in 1955, and the 1955 plat included the parcel. In 1989, however, the School Board conveyed the Community House property to another party. At some point thereafter, David Luke, then the school superintendent, placed a dotted line on the 1955 plat to separate that parcel from the remainder of the School Board's property. The dotted line appeared on the copy of the plat sent to Jarrard. Moye, however, did not tell Jarrard that the School Board no longer owned the Community House property or that the transaction did not include the parcel.

The transaction did not close as planned. The Trust subsequently sued the School Board, alleging that the Board had breached the sales contract because it could not convey good title to the Community House property. The Trust sought damages for the contract breach or, in the alternative, specific performance — at a reduced purchase price — of that portion of the contract involving land the School Board actually owned. The School Board moved for summary judgment, asserting that the parties never intended to include the Community House property in the sale. The trial court agreed, concluding that the Trust knew or should have known that the School Board did not own the Community House property. The trial court also found that the Trust had not met the tender requirement for specific performance.

1. *Breach of Contract.* The Trust argues that the trial court erred in finding as a matter of law that the sales contract did not include the Community House property. Construction of a contract involves a three-step process:

[F]irst, the trial court must decide whether the [contract] language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[3]

The sales contract in this case provided for the sale of "approximately (more or less) 2.72 acres," and it incorporated the 1955 plat showing a 2.72 acre area of land that included the Community House property. Without dispute, the Community House property was separated from the remaining area by a dotted line. The surveyed property referenced in the plat, however, was surrounded by a solid line, and the plat did not specify that the Community House property fell outside of the sales transaction. Moreover, nothing in the contract language excluded the Community House property.

Arguably, the dotted line on the incorporated plat rendered the contract ambiguous.[4] A court seeking to resolve a contractual ambiguity must apply the rules of contract construction, of which the cardinal rule "is to ascertain the intention of the parties."[5] As noted by the School Board, extrinsic evidence may be considered to determine the parties' intent with respect to an ambiguous contract.[6] But we cannot agree that such evidence resolves any ambiguity in this case as a matter of law.

The School Board offered evidence that during a prior land negotiation in the late 1990s, it informed Dunn that it did not own the Community House property.[7] The School Board also presented evidence that in connection with the transaction at issue here, Moye informed Jarrard that the property for sale was surrounded by a fence. The fence did not include the Community House property, and Moye testified that "it was public knowledge" that the School Board no longer owned that parcel of land.

---

[3] See id. at 820 (footnote omitted).

[4] See id. ("Ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations.") (punctuation and footnote omitted).

[5] Id. (punctuation and footnote omitted); see also OCGA § 13-2-3.

[6] See *Holcim (US), Inc.*, supra.

[7] Dunn did not recall this conversation when deposed in 2006.

But Moye never specifically told Jarrard that the transaction excluded the Community House property reflected on the 1955 plat, which the School Board insisted on using to define the property involved in the sale. Neither Jarrard nor Dunn walked the property, and both testified that they believed the 2004 transaction involved all of the land referenced in the plat. Moreover, the Trust offered evidence that exterior property boundaries are signified on a survey by a solid line, and there is no dispute that a school superintendent added the dotted line separating the Community House parcel from the remaining property years after the 1955 survey was performed.

This evidence, combined with references in the sales contract to 2.72 acres and the 1955 plat that included the Community House parcel, raises a question of fact as to the property the parties intended to transfer. Thus, even if an ambiguity exists with respect to the property at issue, the trial court erred in awarding the School Board summary judgment on the breach of contract claim.[8]

2. *Specific Performance.* The trial court, however, properly granted summary judgment on the Trust's specific performance claim. "A requirement for specific performance is an unconditional tender of the contract price unless it is clear from actions of the seller that the tender will be refused."[9] The Trust concedes that it never tendered the full purchase price of $600,000. Nevertheless, it claims that it either met or was excused from the specific performance tender requirement. We disagree.

The Trust first argues that it fulfilled the tender requirement by submitting $10,000 in earnest money with the purchase contract. But Georgia law explicitly requires tender of the contract sales price to obtain specific performance. Payment of earnest money does not suffice.[10]

The Trust also claims that it could not tender the purchase price because the final amount — with abatement for the value of the Community House property — had not yet been determined. Under OCGA § 23-2-134, when a seller cannot deliver title to part of the property involved in a real estate sales contract, the buyer may seek specific performance of that portion of the contract the seller can perform and "compensation for the other part." The tender requirement, however, remains. To obtain specific performance, the buyer

---

[8] See *Holcim (US), Inc.*, supra at 821; *Mon Ami Intl. v. Gale*, 264 Ga. App. 739, 741 (1) (592 SE2d 83) (2003).

[9] *Chastain v. Schomburg*, 258 Ga. 218, 219 (367 SE2d 230) (1988) (citation omitted).

[10] See id.; see also *Gilleland v. Welch*, 199 Ga. 341, 342 (3) (34 SE2d 517) (1945) (tender requirement not met where purchaser tendered only initial payment required by contract).

must fulfill his part of the bargain by paying or making an unconditional tender of the full purchase price.[11] Any issues regarding the property to which the seller lacks title are addressed "by way of damages . . . necessary to make [the] purchaser whole."[12]

Finally, the Trust asserts that tender would have been futile, thus relieving it of its tender obligation. Claiming that the School Board would have refused any tender, the Trust notes that in a letter dated June 13, 2005 — after the Trust filed suit — the School Board attempted to refund the Trust's $10,000 earnest money payment. The School Board's letter explained that it offered the refund "in an effort to resolve this matter" and fully settle all claims. It further stated that, in the alternative, it was prepared to close the sale pursuant to the terms of the contract.

Nothing in the School Board's correspondence indicated that tender of the purchase price would be futile. In fact, the opposite is true — the School Board was prepared to close that portion of the sale to which the Trust now seeks specific performance. Moreover, the Trust responded to this letter by asserting that it would close the sale *if* the original $600,000 purchase price were reduced by the value of the Community House property, to be determined by independent appraisals. The evidence thus shows that the Trust never made an unconditional tender of the contract price. Although the complaint alleged that the Trust was "willing and able" to close on the sale of property actually owned by the School Board, "[t]ender can not be avoided by a promise to pay or an assertion in pleadings of a willingness to pay."[13] Accordingly, the trial court properly granted the School Board summary judgment on the specific performance claim.[14]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Mikell, J., concur.*

DECIDED JUNE 25, 2007.

*James H. Cox*, for appellants.

---

[11] *Chastain*, supra at 219; *Chatham Amusement Co. v. Perry*, 216 Ga. 445, 447 (4) (117 SE2d 320) (1960).

[12] *Chastain*, supra (citations omitted); see also OCGA § 23-2-134.

[13] *Cummings v. Johnson*, 218 Ga. 559, 562 (6) (129 SE2d 762) (1963) (citation and punctuation omitted).

[14] See id.; see also *Burns v. Reves*, 217 Ga. App. 316, 317 (1) (457 SE2d 178) (1995) ("An offer to pay the purchase-price on delivery of a properly executed deed is not an unconditional tender.") (citation and punctuation omitted).

*Harben & Hartley, Sam S. Harben, Jr., Brian C. Smith*, for appellee.