## A11A1036. HIGGINBOTHAM et al. v. KNIGHT.
(719 SE2d 1)

BLACKWELL, Judge.

Gary Knight owns Lot 14 in Phase 2 of the Toccoa Heights subdivision in Fannin County, and Daryle and Rebecca Higginbotham own several adjacent lots in the same subdivision. Knight claims that he has an easement across the Higginbothams' lots, and he brought this suit against the Higginbothams and the developers of the subdivision, seeking a declaratory judgment as to the easement and injunctive relief to protect his right to use the easement from nuisance and other interference. Both Knight and the Higginbothams moved for summary judgment, and after concluding that Knight does, in fact, have an easement across the Higginbothams' lots, the court below awarded partial summary judgment to Knight on his claim for declaratory relief and denied summary judgment to

---

the Higginbothams, who now appeal from both rulings. We find that the relevant agreements, deeds, and plats are ambiguous about whether Knight has an easement across the Higginbothams' land and that this ambiguity cannot be resolved at summary judgment but, instead, must be resolved by a trial. Accordingly, we reverse the award of partial summary judgment to Knight, and we affirm the denial of summary judgment to the Higginbothams.[1]

Summary judgment is warranted when the material facts, as shown by the pleadings and record evidence, are undisputed and these facts entitle the moving party to judgment as a matter of law. See OCGA § 9-11-56 (c). We review de novo the grant or denial of a motion for summary judgment. See *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (grant of motion for summary judgment); *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010) (denial of motion for summary judgment). And we review the record evidence on appeal in the same way as the court below, that is, in the light most favorable to the nonmoving party. See *Merlino v. City of Atlanta*, 283 Ga. 186 (657 SE2d 859) (2008).

The record shows that in May 2003, the Higginbothams purchased three adjacent lots in the Toccoa Heights subdivision: Lots 13, 18, and 19. The parties do not dispute that all of the owners of lots in the subdivision are bound by a road easement agreement that the developers recorded in 2001. This agreement "grant[s] an easement along the road system within the boundaries of the [subdivision] for ingress and egress to each Purchaser, their heirs, and assigns, of lots or property within [the subdivision]," but the agreement does not identify by name, description, definition, or otherwise the specific pathways that constitute the "road system."

---

[1] On appeal, the Higginbothams also contend that the court below erred when it entered a protective order that precluded them from taking the depositions of the developers without Knight's consent and when it entered a temporary injunction that required the Higginbothams to take affirmative steps to open the alleged easement to Knight. Neither of these contentions has merit, and neither warrants much discussion. As to the protective order, the record shows that the Higginbothams had known the identity of the developers for many years, that the Higginbothams made no effort to obtain discovery from the developers during the time permitted for discovery, and that the time for discovery had ended several months before the Higginbothams sought to notice the depositions of the developers. In these circumstances, it was no abuse of discretion for the court to disallow the depositions of the developers, and we affirm the protective order. See *Leventhal v. Seiter*, 208 Ga. App. 158, 161 (1) (430 SE2d 378) (1993) (denial of motion to compel untimely discovery was no abuse of discretion); see also *Bullard v. Bouler*, 272 Ga. App. 397, 398 (1) (612 SE2d 513) (2005) (trial courts have broad discretion with respect to extending or reopening discovery). As to the temporary injunction, it expired by its own terms before this appeal was taken, and the Higginbothams never obtained a supersedeas of the injunction, rendering their appeal now from the injunction moot. See *Grindle v. Chastain*, 229 Ga. App. 386, 388 (1) (493 SE2d 714) (1997) ("To prevent the appeal of a mandatory injunction from becoming moot, it is necessary for the appealing party to obtain a supersedeas.") (citation and punctuation omitted).

The recorded plats for the subdivision depict at least three kinds of pathways that arguably might be considered part of this "road system." First, the plats depict three pathways that are designated as a "road" — Toccoa Heights Road, Fish Trap Road, and River Heights Road — with a width of 18 feet. Second, the plats show several "access drives" that are 12 feet wide. Finally, the plats depict numerous other "drives," all of which are ten feet in width.

The Higginbothams' lots are accessible by use of a single pathway — at least a portion of which is identified in the plats as a "12' gravel access drive with 20' ingress-egress and utility easement" — that traverses the lots and connects to River Heights Road at Lot 19, the southernmost lot owned by the Higginbothams, and it is over this pathway that Knight claims an easement. From its intersection with River Heights Road at Lot 19, the pathway proceeds to the northeast, passing through Lots 19 and 18 to the boundary of Lot 13, the northernmost lot owned by the Higginbothams, upon which they have erected a cabin, and it is this portion of the pathway that is clearly designated as an "access drive."[2] When the pathway comes to the boundary of Lot 13, it appears to continue, according to the plats, across Lot 13, although the portion of the pathway upon Lot 13 is not expressly identified as an "access drive" or any other particular kind of pathway. Upon Lot 13, the unidentified pathway forks, dividing into a short route that clearly terminates within the boundaries of Lot 13 and a second route that runs across Lot 13 and appears to end at or upon the boundary between Lots 13 and 14.[3] In 2004, the Higginbothams erected a gate across the entrance to the access drive on Lot 19, near the point at which the access drive connects to River Heights Road, and they installed a cable across the unidentified pathway that crosses Lot 13, near its end at the boundary of Lot 14.

Knight purchased Lot 14 in January 2006. Whether or not Knight has a right to use the access drive across Lots 18 and 19 and the unidentified pathway that runs across Lot 13 to the boundary of Lot 14, it is undisputed that he also can access Lot 14 by means of a second "access drive" that connects to River Heights Road and clearly terminates within the boundaries of Lot 14 without crossing

---

[2] A copy of the plat depicting the southernmost portions of the disputed pathway is attached to this opinion as Appendix A. A copy of the portion of the plat showing the northernmost part of the pathway as it traverses over Lot 13 is attached as Appendix B.

[3] The parties dispute exactly where the latter pathway ends. According to Knight, the plats show the pathway crossing the boundary onto Lot 14, but the Higginbothams say that the plats depict the pathway "stopping abruptly" at the boundary between Lots 13 and 14. As discussed later in this opinion, our examination of the plats does not allow us to ascertain whether the pathway ends at the boundary between the two lots or if it crosses over the boundary onto Lot 14.

the Higginbothams' lots. Knight also purchased seven other lots in the subdivision, and he built rental cabins on each of his lots. Knight sought to give his renters access to the Toccoa River, which runs immediately to the north of Lots 13 and 14, over the access road and unnamed pathway that pass through the Higginbothams' property. But the Higginbothams have refused, instructing Knight that his renters instead should use the pathway that Knight constructed on Lot 14, which apparently connects with the access drive that terminates within the boundaries of Lot 14, to get to the river.[4]

The parties agree that their property rights are governed by their deeds, the recorded plats referenced by the deeds, and the road easement agreement. A deed is a contract, and whether a deed and any documents incorporated in the deed by reference create an easement is a question of law that properly is resolved by the trial court to the extent that the deed is unambiguous or that any ambiguities can be resolved by application of accepted rules of construction. *Dept. of Transp. v. Meadow Trace, Inc.*, 274 Ga. App. 267, 269 (1) (617 SE2d 246) (2005). If the contract is clear and unambiguous, a court must enforce the contract according to its terms. *Peaches Land Trust v. Lumpkin County School Bd.*, 286 Ga. App. 103, 105 (1) (648 SE2d 464) (2007). If the contract is ambiguous, a court must apply the pertinent rules of contract construction to resolve the ambiguity and determine the intent of the parties. Id. But if an ambiguity remains even after the application of the rules of construction, the ambiguity must be resolved at trial by a jury. Id.

Here, the road easement agreement gives an easement "along the road system" to each owner of a lot in the subdivision, but nothing in the agreement, deeds, or plats specifies whether the pathway that crosses Lot 13 to the boundary of Lot 14 is part of this "road system." In fact, nothing identifies the precise pathways that constitute the "road system," whether by name, definition, description, or a unique marking upon the plats. Although the plats do contain a section designated "Roadway Data," this section refers only to Toccoa Heights Road, Fish Trap Road, and River Heights Road. Knight offers three reasons to believe that the pathway that runs across Lot 13 and terminates at or near the boundary of Lot 14 is part of the "road system."

First, Knight notes that every pathway shown on the plats is depicted by a symbol that represents, according to the legend, either a "paved road," "gravel road," or "dirt road." Because there is no separate symbol in the legend for "access drives" and other "drives,"

---

[4] Knight claims that, because the terrain on Lot 14 is especially steep, the pathway across Lot 13 is the only pathway that provides reasonable vehicular access to the Toccoa River.

Knight argues that every pathway must be a "road" and, therefore, part of the "road system." But if that were so, then not only would the unidentified pathway that crosses Lot 13 to its boundary with Lot 14 constitute a part of the "road system," but so would the numerous "drives" throughout the subdivision, most of which appear to each serve only a single lot and seem to be nothing more than driveways. The terms of a contract should be understood in the way that is most reasonable and probable, and accepting Knight's understanding of the legend of the plats would lead to the arguably absurd result of everyone in the neighborhood having an easement across the driveway of each of his neighbors. See *Office Depot v. The District at Howell Mill*, 309 Ga. App. 525, 530 (2) (710 SE2d 685) (2011). It seems just as likely, if not more so, that the legend of the plats is meant simply to identify which pathways are dirt, which are gravel, and which are paved and is not intended to signal that every pathway in the subdivision, including each of the "drives," is part of the "road system." See *Miller v. Slater*, 182 Ga. 552, 556 (1) (186 SE 413) (1936) (term "driveway" generally means a pathway for the exclusive use of the property owner).

Knight also claims that the pathway across Lot 13 must be a part of the "road system" because it is identified on the plats as an "access drive," but as noted earlier, it is not clear to us that it is so identified. To be sure, as the pathway crosses Lots 19 and 18, it clearly is identified as an "access drive." As it appears on the plats, however, the pathway narrows at the boundary between Lots 18 and 13. Like the other "access drives" depicted on the plats, the pathway is represented by five parallel lines as it crosses Lots 19 and 18, but it is depicted by only three parallel lines after it crosses onto Lot 13, as are the other "drives" depicted on the plats. And even though the pathway across Lot 13 is not specifically identified on the plats as a "drive" — this portion of the pathway bears no specific identification at all — there are other pathways on the plats that appear to be driveways serving individual lots and, like the pathway across Lot 13, are not specifically identified as "drives" or otherwise. Consequently, even if we accepted that the pathways designated as "access drives" are part of the "road system" of the subdivision, whether Knight has an easement over the pathway that leads across Lot 13 to its boundary with Lot 14 — which, according to the plats, might be a mere "drive," as opposed to an "access drive" — still would be unclear.[5]

---

[5] Because we are not sure whether the designation of this pathway as an "access drive" is meant to apply to the pathway after it crosses onto Lot 13, we are equally unsure whether its designation as an "ingress-egress and utility easement" is meant to apply to the portion of the pathway upon Lot 13. It could be that the "ingress-egress" easement designation was

Finally, Knight claims that the plats "clearly" show that the disputed pathway crosses over the boundary between Lot 13 and Lot 14 and "onto" Lot 14. We cannot agree. From our visual inspection of the plats, including enlargements of pertinent portions of the plats that are contained in the record, we simply cannot ascertain whether the pathway ends at the boundary between the lots or crosses barely over the boundary line. Like the other ambiguities that appear from the road easement agreement, the deeds, and the plats, the depiction of the disputed pathway on the plats at the point it intersects the boundary between Lots 13 and 14 is ambiguous and does not clearly indicate whether the pathway crosses the boundary.

None of these ambiguities can be resolved by applying the usual rules of contract construction. Although extrinsic evidence properly may be considered to determine the intent of the parties, the extrinsic evidence in this case is disputed and does not resolve for purposes of summary judgment whether the disputed pathway is part of the "road system" of the subdivision. See *Peaches Land Trust*, 286 Ga. App. at 105 (1). The Higginbothams and Knight each presented affidavits of their own surveyor to provide an expert opinion about whether Knight has an easement over the disputed pathway, and the surveyors came to opposite conclusions.[6] Because the evidence points both ways, neither party was entitled to summary judgment on the question of whether Knight has an easement across the Higginbothams' lots. Accordingly, we must reverse the award of summary judgment to Knight on his claim for declaratory relief. See id. at 105-106 (1).

If it turns out after a trial that Knight, in fact, has an easement across the Higginbothams' lots, he may be entitled to injunctive relief to protect his use of the easement from nuisance or other interference. There is some evidence that Knight purchased his lots in the subdivision based upon an understanding that he and his renters could use the pathway across the Higginbothams' lots as access to the Toccoa River, that the Higginbothams have refused his requests to access the river by this pathway, that the Higginbothams have actively prevented him from doing so by erecting structures across the pathway, and that the Higginbothams have thereby

---

intended only to apply to the portion of the pathway on Lots 18 and 19, giving whoever owned Lot 13 an easement across that portion of the pathway to afford access to Lot 13. This reading of the plats is plausible because Lot 13 otherwise would be inaccessible from any of the named roads of the subdivision.

[6] The Higginbothams also presented evidence that, although the plats indicate that all roads were "existing and stabilized" at the time the plats were recorded, the disputed pathway actually ended "well within" the boundaries of Lot 13, and no survey markings or other landmarks designated a pathway, whether existing or planned, that ran to the boundary of Lot 14.

caused him harm. In light of this evidence and the open question about whether Knight has an easement at all, there are genuine and disputed issues of material fact that preclude summary judgment on Knight's claims for nuisance and injunctive relief. See *Davis v. Overall*, 301 Ga. App. 4, 5-6 (1) (686 SE2d 839) (2009) (interference with easement rights may support claim for nuisance); *Rife v. Corbett*, 264 Ga. 871 (455 SE2d 581) (1995) (interference with easement rights may warrant injunctive relief); see also *Greenwald v. Kersh*, 265 Ga. App. 196, 201-202 (1) (593 SE2d 381) (2004). Accordingly, we affirm the denial of the Higginbothams' motion for summary judgment on these claims.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Adams, J., concur.*

## APPENDIX A

## APPENDIX B

DECIDED SEPTEMBER 27, 2011 —
RECONSIDERATION DENIED NOVEMBER 15, 2011 —

*Haynie, Litchfield & Cranie, Douglas R. Haynie, Daniel W. White, Barbara A. Sosebee, Brock, Clay, Calhoun & Rogers, Richard W. Calhoun*, for appellants.

*Sams, Larkin & Huff, James A. Balli*, for appellee.