**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**April 25, 2012**

# In the Court of Appeals of Georgia

A12A0209. BOARD OF COMMISSIONERS OF CRISP COUNTY
v. CITY COMMISSIONERS OF THE CITY OF CORDELE.

DILLARD, Judge.

The Board of Commissioners of Crisp County ("the County") appeals the trial court's grant of summary judgment to the City Commissioners of Cordele ("the City") and the denial of the County's motion for summary judgment as to a contract dispute between the parties. The County essentially argues that the trial court erred by using parol evidence to construe an unambiguous contract rather than looking to the document's plain meaning, thereby rewriting the terms of the contract. For the reasons set forth *infra*, we affirm the trial court's order.

At the outset, we note that "[s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

law."[1] And on appeal, "we view the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact."[2]

So viewed, the record reflects that the County and City entered into a Waste Service Agreement that was effective January 1, 1996. The terms of the contract were to commence upon its execution and end upon the fiftieth anniversary of same. And the agreement provided that the County had "created an Authority which plans to construct and operate a permitted municipal solid waste processing facility located in Crisp County," referred to throughout the contract as the "Waste Processing Facility."

---

[1] *Carter v. Moody*, 236 Ga. App. 262, 263 (511 SE2d 520) (1999) (punctuation omitted); *see also* OCGA 9-11-56; *S .Gen. Ins. Co. v. Wellstar Health Sys., Inc.*, No. A11A2065, 2012 WL 917604, at *1 (Ga. App. Mar. 20, 2012) ("To prevail on summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, when viewed in the nonmovant's favor, entitle the movant to judgment as a matter of law.").

[2] *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818, 818 (596 SE2d 197) (2004) (punctuation omitted); *see also Carter*, 236 Ga. App. at 263 ("A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

The agreement further provided that the County desired "to own and operate the Crisp County Landfill for the benefit of all of the households located in Crisp County, including those located within the City" and that the City desired "to have the County process and/or dispose of all the household waste produced within the jurisdiction of the City . . . ." Additionally, the agreement reflected the City's desire to enter into the agreement with the County to convey property within the City to the County for the use of the facilities and services of the County.[3]

The terms of the agreement defined the type of waste material to be accepted and covered, and the services that the County would provide. Specifically, Paragraph 5 of the agreement provides that "[t]he County will own and operate a Sanitary Landfill . . . for the disposition of Municipal Solid Waste," with the City responsible for delivering its waste to the landfill at a site designated by the County, after which "the County will process and dispose of the Waste Material at the Landfill and/or the Waste Processing Facility." In Paragraph 6, the agreement provides that "[t]he County

---

[3] We note that upon termination of the contract, and "upon the agreement of the City to share equally in all future costs and liabilities of the landfill operation," the County is to "convey a one-half undivided interest to all landfill related property owned at such time by the County."

shall perform the services required by this Agreement without compensation by the City."

Thereafter, Paragraph 7 includes warranties by the City to the County, one of which is that the County "will assume responsibility for the collection of all Solid Waste Disposal Fees, including without limitation the residential disposal fees, levied in Crisp County, including the incorporated areas thereof, on or before July 1, 1996 . . . ." Paragraph 8 provides additional warranties to the City by the County, and states at the outset that it applies "[i]n the event that the Authority constructs and operates the Waste Processing Facility" and "for so long as the Waste Processing Facility is operating . . . ." One such warranty states that "it will rescind the Waste Disposal Fee for residential households located in Crisp County, including the incorporated areas thereof, during the period of operation of the Waste Processing Facility."

The current dispute between the County and City arose after the County issued a letter to the City Commissioners on July 27, 2009, which noted that its purpose was "to provide notice of a change in the County's operation of the landfill." The letter then briefly explained the history of the agreement between the City and the County, namely that the agreement "was made in anticipation of the construction and operation of a solid waste recycling facility," that the intent "was to use the revenues

4

from the recyclables to fund the cost of disposing residential solid waste from households in our county," and that the agreement "stipulated that households in the County would not be charged a waste disposal fee as long as the waste processing facility was operating."

In the next paragraph of the letter, the County explained that it had "abided by that provision since 1996 even though the waste processing facility center has never operated to the point of generating revenues from the recyclables" and that the "County Commission has subsidized the landfill operation from [its] general fund to cover the cost of disposing residential solid waste for no charge." Accordingly, the letter gave notice that the County was "no longer in an economic position to continue to fund the disposal costs in the same manner" and that it would "impose a fee for disposal of residential solid waste from the incorporated areas of the county" effective August 31, 2009.

Thereafter, the City refused to pay any such fees to the County, and the County brought suit against the City, alleging that "[t]he Authority essentially never operated the Waste Processing Facility from the time the Facility opened and specifically has not operated it since August 21, 2009" and seeking to recover fees allegedly owed by the City in excess of $100,000.00. In response, the City answered and filed a motion

5

for summary judgment arguing, *inter alia*, that the plain terms of the agreement exempt the City from paying fees for fifty years. The County also sought summary judgment, arguing that the plain terms of the agreement showed that the City was required to pay fees for services.

After conducting a hearing on the matter,[4] the trial court granted summary judgment to the City and denied same to the County. Specifically, the trial court found that there was no ambiguity between the contract provisions, that Paragraph 6 "provides clearly that the City is to receive the landfill service free of charge," and that Paragraph 8 was "clearly intended as a warranty that the Authority being created to run the recycling center would also not charge a fee for city garbage that was processed by that facility." Further, the court held that even if an ambiguity existed, the first provision (*i.e.*, Paragraph 6) would control under the rules of contract construction. Finally, the court stated that its construction of the contract was "consistent with the obvious intent of the parties" as reflected in the documentation attached to the City's motion for summary judgment (namely, meeting minutes and

---

[4] The hearing apparently was not transcribed, as the County amended its notice of appeal to "reflect that there is no transcript of proceeding for inclusion in the Record of Appeal."

affidavits of local government representatives who were involved in the contract negotiations).

This appeal by the County follows, in which the County argues that (1) the trial court improperly used parol evidence to construe an unambiguous contract, resulting in a clearly erroneous judgment and (2) the trial court's use of parol evidence resulted in a rewriting of the contract, which constituted an abuse of discretion. Because these enumerations are essentially the same, we address them as one.

To begin with, we note that the construction of a contract is a question of law for the court.[5] And the construction of a contract involves three steps. The first step is to decide whether the language of the contract is clear and unambiguous.[6] If so, the contract is enforced according to its plain terms, and the contract alone is looked to for meaning.[7] Second, if the language of the contract is ambiguous in some respect, the rules of contract construction must be applied by the court to resolve the ambiguity.[8] And finally, if ambiguity remains after applying the rules of construction,

---

[5] *See, e.g.*, *Holcim (US), Inc.*, 265 Ga. App. at 820.

[6] *See id.*

[7] *See id.*

[8] *See id.*

"the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."[9] Indeed, "the cardinal rule of contract construction is to ascertain the intention of the parties."[10]

In the case *sub judice*, both parties contend that the meaning of the contract is plain but interpret the intention of the agreement in different ways. The County argues on appeal that the trial court properly found that the agreement between the parties was unambiguous but that the court "erred when it looked outside the unambiguous agreement to determine the intent of the parties." The County's position is that "[t]he clear emphasis and intent of the parties was for the City [sic] to own and operate the landfill without operational cost contribution from the County [sic]." But the County argues that Paragraph 8 (a) "specifically conditions the free service on the operation of a waste processing facility." Specifically, the County contends that "Paragraph 5 and Paragraph 6 require the County to provide several waste collection and disposal services for the City at no cost to the City," but that "later in the contract, in Paragraph 8, free disposal service or more specifically, rescission of the waste disposal fee, is conditioned on the operating of the waste processing facility."

---

[9] *Id.* (punctuation omitted).

[10] *Id.*

8

The City, on the other hand, argues on appeal that the County has misconstrued the trial court's order because the court did not in fact look to parol evidence to ascertain the meaning of the contract, instead looking solely to the four corners of the document before stating in dicta that its construction of the contract was supported by other evidence. As to the contract itself, the City contends that the County's interpretation of Paragraph 8 (a) would render Paragraph 6 meaningless. Additionally, the City argues that Paragraph 7 establishes that the fees referenced in Paragraph 8 (a) "are a tax of sort that was levied by [the County] on county residents, not a fee to a municipality."

Having carefully examined the record, we disagree with the County that the trial court used parol evidence to reach its decision. Indeed, the trial court's order makes clear that the court first looked to the four corners of the document and found the language of the contract to be clear and unambiguous, that the court then supported its decision with references to rules of construction, and that the court finally further bolstered its interpretation of the contract's plain meaning by reference to evidence submitted by the City with its motion for summary judgment. And to the extent that the County argues that the trial court's grant and denial of summary judgment was in error because the court's interpretation of the contract was

erroneous, we disagree and affirm the court's judgment, even though we interpret the contract somewhat differently from the trial court.[11]

In a nutshell, find the language of the contract plain and unambiguous because the County is explicitly bound via Paragraph 6 of the agreement to "perform the services required by [the] Agreement without compensation by the City." Moreover, paragraphs 7 and 8 (a) are not in conflict with this provision because those paragraphs refer to the collection (or non-collection) of a so-called waste disposal fee, which is defined nowhere in the agreement or in the record before us, and which gives no indication from whom said fee is to be collected. But that fee, per the terms of Paragraph 6, cannot be collected from the City itself.

This interpretation comports with the rules of construction, which require this Court "to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other."[12] Additionally, when a written contract's terms are clear and unambiguous, "the court cannot go beyond the contract

---

[11] *See, e.g.*, *Little v. Fleet Fin.,* 224 Ga. App. 498, 503 (1) (481 SE2d 552) (1997) ("A trial court's judgment, right for any reason, will be affirmed.").

[12] *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 577 (2) (649 SE2d 740) (2007).

itself and must confine itself to the contract alone to find the parties' intent."[13] And "ambiguity is not to be created by lifting a clause or portion of the contract out of context, nor are we to call forth doubt or make hypercritical constructions."[14] Finally, "it is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless."[15]

Accordingly, the plain terms of the contract preclude the County from seeking compensation by the City for the performance of the County's services during the duration of the agreement, and the trial court properly granted summary judgment to the City and denied same to the County.[16]

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[13] *Verret v. ABB Power T & D Co.*, 237 Ga. App. 492, 493 (1) (515 SE2d 435) (1999).

[14] *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 869 (578 SE2d 470) (2003) (citation and punctuation omitted).

[15] *ALEA London Ltd.*, 286 Ga. App. at 577 (2) (punctuation omitted).

[16] The City's motion for the imposition of frivolous appeal sanctions is denied.