**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2014**

# In the Court of Appeals of Georgia

A14A0469. ATLANTA EMERGENCY SERVICES, LLC v. CLARK.

DILLARD, Judge.

Linda Clark, M.D., sued Atlanta Emergency Services, LLC ("AES"), alleging that AES breached a contract between the parties when it terminated her employment as an emergency-room physician at Piedmont Hospital. Following a jury verdict and judgment in Dr. Clark's favor, AES appeals, arguing that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict (j.n.o.v.). Specifically, AES contends that no genuine issues of material fact support Dr. Clark's claims for breach of contract or attorney fees and that the jury's damages award was unlawful. For the reasons set forth *infra*, we affirm the jury's verdict and the trial court's judgment.

Construed in favor of the jury's verdict,[1] the evidence shows that AES is an operating entity of a private company known as the Schumacher Group, which is engaged in the business of providing emergency-medicine-practice management to both small and large hospitals throughout the southeast. Toward that end, the Schumacher Group, via its operating entities such as AES, contracts with hospitals to provide physician staffing for the hospitals' emergency departments and does so by recruiting independent-contractor physicians. From July 2010 until April 2012, AES provided Piedmont Hospital with emergency-department physicians pursuant to such a contract.

In July 2010, Dr. Clark, a board-certified emergency-room physician, entered into an employment contract with AES, titled "Physician Agreement," to work in the emergency department at Piedmont Hospital. The agreement included a provision, designated as Section 7, that outlined the means by which the agreement—and the physician's employment—could be terminated. Subsection (a), in part, provided: "this Agreement shall be subject to termination without cause by either party giving not less than sixty (60) days prior written notice to the other party specifying the date of termination." In contrast, subsection (b), in part, provided: "Corporation may also

---

[1] *See, e.g.*, *Horton v. Hendrix*, 291 Ga. App. 416, 416 (662 SE2d 227) (2008).

2

terminate this Agreement immediately in the event that . . . (v) Hospital requests the removal of Physician or reports that Physician is being disruptive, unprofessional, or unreasonably uncooperative with the medical or administrative staff of Hospital. . . ."

Over the course of the next year, the medical director of AES, Dr. Michael Flueckiger, who was also an emergency-department physician at Piedmont Hospital, received over a dozen complaints from nurses in the emergency department, stating that Dr. Clark treated them rudely and/or disrespectfully. During that same period of time, despite the fact that it was undisputed that she was a competent emergency-department physician, Dr. Flueckiger also received similar complaints about Dr. Clark from other physicians on staff at Piedmont, as well as from several emergency-room patients. Consequently, in late July 2011, Dr. Flueckiger and Cynthia Troutman, AES's nurse liaison to Piedmont Hospital, met with Dr. Clark to discuss means by which to resolve these issues and prevent their recurrence.

Nevertheless, on September 25, 2011, Troutman and Dr. John Limehouse, AES's assistant medical director at Piedmont Hospital, met with Dr. Clark and informed her that her employment was being terminated without cause effective in 60 days and, thus, her last day of employment would be November 24, 2011. During

3

this meeting, Dr. Clark requested written notice regarding this termination decision, but none was ever provided to her. Then, on October 26, 2011, the new medical director for AES requested that Dr. Clark participate in a conference call, at which time he informed her that her employment was being terminated immediately for cause based on a request by the administration of Piedmont Hospital. Later, however, Dr. Clark learned that the decision to terminate her employment for cause was made by AES and that Piedmont Hospital had made no such request.

On January 18, 2012, Dr. Clark filed a lawsuit against AES, alleging that AES breached the Physician Agreement when it terminated her employment for cause despite the fact that the conditions required for such a termination were not satisfied. Dr. Clark's complaint also alleged that AES's actions constituted bad faith, and thus, she sought to recover attorney fees as well as lost income. AES filed an answer, and after discovery closed, it moved for summary judgment, arguing that its termination of Dr. Clark's employment for cause was authorized by the unambiguous terms of the Physician Agreement. In response, Dr. Clark argued that summary judgment was precluded because the agreement was ambiguous regarding whether complaints from individual nurses and physicians constituted "reports" from the "Hospital" that Dr. Clark was "disruptive, unprofessional, or unreasonably uncooperative with the

4

medical or administrative staff of Hospital." Following a hearing, the trial court denied AES's motion and, later, denied AES's motion for reconsideration of the issue.

The case then proceeded to trial. And after Dr. Clark rested, AES moved for a directed verdict as to all of her claims, but the trial court reserved ruling. AES then presented its evidence, and at the conclusion of the trial, the jury found in favor of Dr. Clark and, pursuant to a general-verdict form, awarded her $61,721.02 in damages. Thereafter, the trial court made the jury's verdict its final judgment. Subsequently, AES filed a motion for j.n.o.v., which the trial court denied after a hearing. This appeal follows.

1. AES contends that the trial court erred in denying its motions for directed verdict and j.n.o.v.,[2] arguing that the termination provision in the Physician Agreement is unambiguous and, thus, no genuine issues of material fact support Dr. Clark's claim for breach of contract. We disagree.

---

[2] AES also contends that the trial court erred in denying its motion for summary judgment and motion for reconsideration regarding these issues, but "after a verdict and judgment, review of an order denying summary judgment is moot." *Rowe v. Law Offices of Ben C. Brodhead, P.C.*, 319 Ga. App. 10, 16 (3) n.7 (735 SE2d 39) (2012).

It is, of course, axiomatic that on appeal from the denial of a motion for a directed verdict or a motion for j.n.o.v., we construe the evidence "in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict."[3] In fact, because the jurors are the "sole and exclusive judges of the weight and credit given the evidence," we must construe the evidence with "every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict."[4] However, we review questions of law *de novo*.[5] With these guiding principles in mind, we turn now to AES's specific claims of error.

As previously mentioned, AES argues that its termination of Dr. Clark's employment for cause was authorized by the unambiguous terms contained in Section 7 of the Physician Agreement. And in considering this argument, we begin by noting that an issue of contract construction is usually a question of law for the court to

---

[3] *Park v. Nichols*, 307 Ga. App. 841, 845 (2) (706 SE2d 698) (2011) (punctuation omitted).

[4] *Wood v. B & S Enterprises, Inc.*, 314 Ga. App. 128, 135 (5) (723 SE2d 443) (2012) (footnote and punctuation omitted).

[5] *Eason v. Dozier*, 298 Ga. App. 65, 65 (679 SE2d 89) (2009).

resolve and, as such, it is subject to *de novo* review.[6] That being said, "the construction of a contract involves three steps."[7] The first step is for the court "to decide whether the language of the contract is clear and unambiguous."[8] If there is no ambiguity, "the contract is enforced according to its plain terms, and the contract alone is looked to for meaning."[9] Importantly, contract language is unambiguous if "it is capable of only one reasonable interpretation."[10] Secondly, if the language of the contract is ambiguous in some respect, "the rules of contract construction must be applied by the court to resolve the ambiguity."[11] And lastly, if ambiguity remains after applying the rules of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."[12]

---

[6] *Mon Ami Int'l, Inc. v. Gale*, 264 Ga. App. 739, 740-41 (1) (592 SE2d 83) (2003).

[7] *Bd. of Comm'rs of Crisp County v. City Comm'rs of the City of Cordele*, 315 Ga. App. 696, 699 (727 SE2d 524) (2012).

[8] *Id.*

[9] *Id.*

[10] *Stefano Arts v. Sui*, 301 Ga. App. 857, 860 (1) (690 SE2d 197) (2010) (punctuation omitted).

[11] *Bd. of Comm'rs of Crisp County*, 315 Ga. App. at 699.

[12] *Id.* (punctuation omitted).

7

Here, as noted *supra*, Section 7 (b) (v) of the Physician Agreement provides that the agreement can be terminated immediately in the event that the *Hospital* requests the removal of the Physician or reports that she is being disruptive, unprofessional, or unreasonably uncooperative with the medical or administrative staff of Hospital. However, the term "Hospital" is not defined in the agreement. Thus, it is unclear who must report that a physician is being disruptive, unprofessional, or unreasonably uncooperative in order to justify immediate termination. And while AES argues that individual nurses and physicians constitute the "Hospital," Dr. Flueckiger—AES's former medical director—testified that individual nurses did not speak for the hospital and that the hospital instead spoke through its "executive team." Similarly, the term "reports" is also not defined. Consequently, it is likewise unclear whether individual verbal complaints from nurses and physicians amount to the reporting contemplated by the agreement or whether a more formal written report from the hospital's executive team is required. Given that its language is capable of more than one reasonable interpretation, the trial court did not err in finding that Section 7 (b) (v) is ambiguous, and this same evidence supported the jury's verdict

that AES's immediate termination of Dr. Clark's employment breached the agreement.[13]

2. AES also contends that the trial court erred in denying its motions for directed verdict and j.n.o.v. as to Dr. Clark's claim for attorney fees under OCGA § 13-6-11. Once again, we disagree.

Under Georgia law, expenses of litigation and attorney fees may be awarded, pursuant to OCGA § 13-6-11, if "the fact-finder determines the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."[14] Of course, questions concerning bad faith, stubborn

---

[13] *See Certain Underwriters at Lloyd's of London v. Rucker Constr. Inc.*, 285 Ga. App. 844, 848-50 (2) (648 SE2d 170) (2007) (holding that trial court did not err in finding that language in insurance contract was sufficiently ambiguous to create a jury question, and that evidence supported jury's verdict that insurer breached the contract). *Cf. Barrett v. Britt*, 319 Ga. App. 118, 122-24 (736 SE2d 148) (2012) (reversing trial court's grant of summary judgment in defendants' favor because genuine issues of fact remained and created a jury issue as to the meaning of ambiguous terms in real estate contract); *Higginbotham v. Knight*, 312 Ga. App. 525, 528-31 (719 SE2d 1) (2011) (reversing grant of summary judgment because ambiguous terms in parties' deeds created genuine issues of fact to be resolved by a jury); *Peaches Land Trust v. Lumpkin County School Bd.*, 286 Ga. App. 103, 105 (1) (648 SE2d 464) (2007) (reversing grant of summary judgment because real estate contract contained ambiguities that created genuine issues of fact to be resolved by a jury).

[14] *Forsyth County v. Martin*, 279 Ga. 215, 219 (2) (b) (610 SE2d 512) (2005); *see* OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as

9

litigiousness, and unnecessary trouble and expense under OCGA § 13-6-11 are "generally questions for the jury to decide."[15] And an award of attorney fees under OCGA § 13-6-11 is to be affirmed if "there is any evidence to support it."[16]

AES argues that attorney fees were unwarranted because there was no evidence of bad faith, and a bona fide controversy existed as to whether its immediate termination of Dr. Clark's employment breached the Physician Agreement. But as we have previously explained, "[a] bona fide controversy within the contemplation of [OCGA § 13-6-11] pertains solely to the issue of stubborn litigiousness or causing the plaintiff unnecessary trouble and expense."[17] Moreover, regardless of "the existence of a bona fide controversy as to liability, a jury may find that defendant acted in the most atrocious bad faith in his dealing with the plaintiff."[18] In this regard,

---

a part of the damages; but where the plaintiff has specially pleaded and has made [a] prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.").

[15] *Martin*, 279 Ga. at 219 (2) (b) (punctuation omitted).

[16] *City of Gainesville v. Waters*, 258 Ga. App. 555, 559 (4) (574 SE2d 638) (2002) (punctuation omitted).

[17] *Southern Co. v. Hamburg*, 220 Ga. App. 834, 841 (4) (470 SE2d 467) (1996).

[18] *Id.* (punctuation omitted).

10

bad faith warranting an award of attorney fees must have "arisen out of the transaction on which the cause of action is predicated," and it "may be found in defendant's carrying out the provisions of the contract, that is, in how defendant acted in his dealing with the plaintiff."[19] Thus, defendants can be held liable for attorney fees if they "committed the breach [of contract] in bad faith."[20]

Here, there was evidence from which the jury could conclude that AES decided to terminate Dr. Clark's employment immediately even though it lacked cause to do so. As mentioned *supra*, on September 25, 2011, AES initially informed Dr. Clark that she was being terminated without cause and, therefore, under the terms of the Physician Agreement her final day of employment would have been November 24, 2011. However, contrary to the terms of the agreement, this decision was never provided to Dr. Clark in writing. And then, one month later, AES informed Dr. Clark that she was now being terminated for cause effective immediately and that this decision had come from the Hospital when, in fact, it had not. During trial, Cynthia Troutman, AES's nurse liaison, could not explain why Dr. Clark was not provided

---

[19] *Harris v. Tutt*, 306 Ga. App. 377, 380 (3) (702 SE2d 707) (2010) (punctuation omitted).

[20] *Id.* (punctuation omitted).

11

with written notice of the initial termination-without-cause decision other than to agree that AES's responsibility to provide such notice "fell through the cracks." Shortly thereafter, Troutman testified that after AES realized that it failed to provide the required notice, it decided to terminate Dr. Clark's employment immediately. Troutman further conceded that given the choice between restarting the 60-day notice period at the time AES realized notice had not been provided or immediately terminating Dr. Clark's employment for cause, the less expensive option was the latter. Accordingly, the trial court did not err in denying AES's motions for directed verdict and j.n.o.v. as to Dr. Clark's claim for attorney fees under OCGA § 13-6-11 and allowing the issue to go to the jury.[21]

---

[21] *See id.* (holding that whether homeowners misrepresented to contractor certain construction costs that otherwise should have been included in the calculation of his compensation and, therefore, warrant an award of attorney fees based on homeowners' bad faith, was an issue for the jury); *Capital Health Mgmt. Group, Inc. v. Hartley*, 301 Ga. App. 812, 823-24 (4) (689 SE2d 107) (2009) (holding that evidence that employer terminated employee and denied her deferred compensation payments based on an improper motive was sufficient to support award of attorney fees for bad faith in employee's breach of contract action); *ISS Int'l Serv. Sys. v. Widmer*, 264 Ga. App. 55, 62-63 (4) (589 SE2d 820) (2003) (finding of bad faith under OCGA § 13-6-11 supported by evidence that defendant terminated senior executive and ignored clear terms of employment agreement simply to avoid having to pay the executive).

3. AES further contends that the trial court erred in denying its motion for j.n.o.v. because the jury's damages award was unlawful on its face in that it did not correspond with Dr. Clark's lost-income claim but, rather, corresponded—to the penny—with her claim for attorney fees. This contention lacks merit.

Importantly, the question of damages is ordinarily one for the jury, "and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."[22] In addition,

> [a] trial court's approval of a jury verdict as to damages . . . creates a presumption of correctness that cannot be disturbed on appeal absent compelling evidence, and a reviewing court is powerless to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means.[23]

Here, Dr. Clark claimed lost earnings of just over $50,000, plus pre-judgment interest, and submitted additional evidence that she had incurred $61,702.02 in attorney fees. Thus, we do not find that the jury's total damages award of $61,721.02

---

[22] *Hilb, Rogal & Hamilton Co. of Atlanta, Inc. v. Holley*, 295 Ga. App. 54, 59 (3) (670 SE2d 874) (2008) (punctuation omitted).

[23] *Id.* (punctuation omitted).

13

was so excessive as to be inconsistent with the preponderance of evidence demonstrated at trial.[24] Moreover, AES's argument fails because of the form of the verdict, which "did not require the jury to specify how it reached its damages figure."[25] Under Georgia law, in the absence of a verdict form requiring greater specificity, "the method by which a jury reaches a particular verdict is not a matter of which this court can take judicial cognizance."[26] Indeed, if AES desired an explanation of the basis for the damage award, "it should have objected to the verdict form, which allowed the jury free rein to set damages."[27] Accordingly, the trial court did not err in finding that the jury's verdict was lawful.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[24] *See id.* at 59-60 (3).

[25] *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 108 (3) (483 SE2d 342) (1997).

[26] *Id.* at 108-09 (3) (punctuation omitted).

[27] *Id.* at 109 (3).