A08A0232. LOKEY v. GEORGIA DEPARTMENT OF DRIVER SERVICES.

(663 SE2d 283)

MILLER, Judge.

James Thomas Lokey III appeals from the trial court's order affirming a decision of an administrative hearing officer that, in turn, upheld the revocation of Lokey's driver's license by the Georgia Department of Driver Services (the "DDS") and found such revocation to be effective as of May 17, 2006. The conviction that resulted in the revocation of Lokey's driver's license was entered on December 16, 2004. Lokey argues that because notice of this conviction was not transmitted to the DDS within the ten-day time period prescribed by OCGA § 40-5-53 (b), the revocation of his driver's license is invalid, and must be set aside. We disagree, finding that the DDS validly revoked Lokey's license on December 16, 2004. We therefore affirm that part of the trial court's order upholding the revocation of Lokey's driver's license, but reverse that part of the order finding that the revocation was not effective until May 17, 2006.

"This appeal presents a question of law, which we review de novo. [Cit.]" *Burdett v. State*, 285 Ga. App. 571 (646 SE2d 748) (2007).

So viewed, the record shows that Lokey was convicted of three separate charges of DUI (in violation of OCGA § 40-6-391) within a five-year period. The second and third convictions resulted from incidents occurring on April 16, 2004 and July 12, 2004, respectively, and were both entered in the Superior Court of Richmond County on December 16, 2004. On that same day, Lokey was served with personal notice of his status as a habitual violator under OCGA § 40-5-58 (a).[1] That notice was on DDS letterhead and stated:

> You are hereby notified that as of December 16, 2004 you
> have been declared a Habitual Violator of the laws relating

---

[1] That statute defines "habitual violator" as "any person who has been arrested and convicted within the United States three or more times within a five-year period of time" for certain, specified traffic violations, including DUI.

to motor vehicles and traffic pursuant to the Driver's Licensing Act (Ga. Code 40-5-58, as amended) and that henceforth it shall be unlawful for you to operate a motor vehicle in the State of Georgia. Your license and privilege to operate a motor vehicle in this State is revoked for a minimum of five (5) years from December 16, 2004 and will remain revoked until requirements of Code Section 40-5-62 are complied with.

Although OCGA § 40-5-53 (b) required the Richmond County Superior Court to forward notice of Lokey's December 16, 2004 convictions to the DDS within ten days of the same, it apparently failed to do so. The DDS records reflect that it did not receive notice of Lokey's second DUI conviction (resulting from his April 16, 2004 arrest) until May 26, 2005 and did not receive notice of his third conviction (resulting from his July 12, 2004 arrest) until May 3, 2006.[2] In the interim, Lokey applied for and received a limited driving permit from the DDS sometime between December 29, 2005 and February 24, 2006.[3]

On May 3, 2006, after it processed notice of Lokey's third DUI conviction, the DDS sent Lokey a second notice of his status as a habitual violator and the revocation of his driver's license. That notice differed from the first notice in that it: (i) declared Lokey a habitual violator as of May 3, 2006; (ii) asserted that Lokey's driver's license was revoked effective May 17, 2006; and (iii) informed Lokey that he could not apply for reinstatement of his driver's license until a minimum of five years after May 17, 2006.

Lokey requested and received an administrative hearing as to the validity and effective date of his license revocation, after which the administrative hearing officer found that Lokey's license was validly revoked as of May 17, 2006. Lokey appealed that ruling to the Superior Court of McDuffie County, which entered an order affirming the decision of the administrative hearing officer. This Court subsequently granted Lokey's application for an interlocutory appeal.

1. Lokey contends that the failure of the Richmond County Superior Court to forward notice of his second and third DUI convictions to the DDS within ten days after those convictions were entered renders the revocation of his license invalid. We disagree.

---

[2] There is no explanation in the record as to why notice of these two convictions, which were entered on the same day in the same court, was forwarded to the DDS separately. Nor is there any indication as to why the separate notices were sent approximately one year apart.

[3] This limited driving permit was issued pursuant to OCGA § 40-5-62 (a), which is discussed infra, at Division 2.

This Court previously addressed this exact issue in *Hardison v. Orndorff*, 173 Ga. App. 630, 630-631 (327 SE2d 497) (1985). In that case, the conviction of Orndorff that resulted in the revocation of his driver's license occurred in August 1980. The convicting court, however, neglected to transmit notice of that conviction to the DDS until approximately three years later. The DDS then revoked Orndorff's license, and he appealed that revocation to the superior court. The trial court declared the revocation invalid, finding that the language of OCGA § 40-5-53 (b), requiring a trial court to transmit notice of relevant convictions to the DDS within ten days of the same, was mandatory.[4] It therefore concluded that the failure to meet this requirement deprived the DDS of jurisdiction to revoke Orndorff's license. Id. at 632.

On appeal, this Court reversed, relying on the language found in the first part of OCGA § 40-5-58 (b), which provides:

> When the records of the [DDS] disclose that any person has been arrested and convicted of a [traffic] violation . . . , which record of arrest and conviction, when taken with and added to previous arrests and convictions of such person as contained in the files of the [DDS], reveals that such person is a habitual violator as defined in subsection (a) of this Code section, the [DDS] shall forthwith notify such person that upon the date of notification such person has been declared . . . to be a habitual violator, and that henceforth it shall be unlawful for such habitual violator to operate a motor vehicle in this state unless otherwise provided in this Code section.

We held that this language "expressly recognizes that the [DDS] can only act, and must act, based upon what its records disclose and when the records disclose it — not when the court acts." *Hardison*, supra, 173 Ga. App. at 632. Thus, we reasoned that while "[t]he statute directing the courts to send a ten-day notice is facilitative of supplying records to the [DDS], . . . the [DDS'] duty to act is not based upon when the court acts, but upon when its records disclose facts sufficient to revoke a license." Id.

*Hardison* establishes that a trial court's delay in forwarding to the DDS notice of an individual's conviction cannot operate to invalidate an otherwise valid revocation of that person's driver's

---

[4] OCGA § 40-5-53 (b) provides, in relevant part: "Every court in . . . this state having jurisdiction over [traffic] offenses . . . shall forward to the [DDS], within ten days after the conviction of any person in such court for . . . any such [offense]."

license. Id. Lokey has offered no substantive arguments as to why this rationale is no longer persuasive and, accordingly, we find that the trial court below properly refused to set aside the revocation of Lokey's driver's license.

2. We further hold, however, that the trial court erred in relying on *Hardison* to find that Lokey's license was revoked on May 17, 2006, rather than December 16, 2004.

The driver in *Hardison* (Orndorff) was notified of his habitual violator status and the revocation of his driver's license pursuant to the language found in the first part of OCGA § 40-5-58 (b), quoted above. Lokey, however, was notified of his habitual violator status and the revocation of his driver's license pursuant to the language found in the latter part of that statutory subsection, which provides:

> In addition to the procedure set forth [earlier] in this subsection, the sentencing judge or prosecutor in a conviction which . . . classifies the defendant as a habitual violator may, at the time of sentencing, declare such defendant to be a habitual violator. The judge or prosecutor shall, when declaring a defendant to be a habitual violator, then give personal notice to such defendant on forms provided by the [DDS] that henceforth it shall be unlawful for such habitual violator to operate a motor vehicle in this state unless otherwise provided in this Code section. The judge or prosecutor, as the case may be, shall within three days forward to the [DDS] the order declaring that the defendant is a habitual violator, the notice of service, with the defendant's driver's license or a sworn affidavit of the defendant declaring that the driver's license has been lost, and the [DDS'] copy of the uniform citation or the official notice of conviction attached thereto.

Here, it is clear that Lokey's driver's license was revoked on December 16, 2004, in accordance with the foregoing language. This conclusion is supported by the DDS's own records, which reflect that as of February 16, 2005 the DDS had received notice that, on December 16, 2004, Lokey had been declared a habitual violator, had accordingly had his driver's license revoked, and had been personally served with notice of his status as a habitual violator and the revocation of his driver's license.

The DDS, however, argues that the December 16, 2004 notice to Lokey was "premature," and therefore invalid, because it was issued before the DDS records reflected Lokey's third conviction. In essence, the DDS takes the position that there can be no valid revocation of a habitual violator's license unless and until the DDS

receives "official" notice of the conviction triggering that revocation from the convicting court. This argument, however, ignores both the language found in the latter part of OCGA § 40-5-58 (b), as well as that found in OCGA § 40-5-60, which explicitly provides that "[a]ll revocations . . . provided for in this chapter shall be effective on the day the driver receives actual knowledge or legal notice thereof, whichever occurs first."

The DDS also argues that as of December 16, 2004, Lokey's license was merely suspended, as opposed to revoked, citing to the fact that Lokey applied for and received a limited driving permit sometime between December 2005 and February 2006. According to the DDS, Lokey received this permit pursuant to OCGA § 40-5-62 (a), which allows a person whose license has been suspended as a result of a second DUI conviction within a five-year period to apply for a limited driving permit 18 months after the second conviction. We note, however, that while 18 months had elapsed since the date of Lokey's second offense, only a little over 14 months had elapsed since his conviction for the same. Given that Lokey was not entitled to the limited driving permit even if his license had been merely suspended, we view the issuance of such a permit as evidence of an administrative mistake on the part of the DDS, rather than as evidence that Lokey's license had previously been suspended, instead of revoked. Accordingly, we find that Lokey's driver's license was revoked effective December 16, 2004 and that he may apply for reinstatement of the same a minimum of five years after that date. See OCGA § 40-5-62 (a) (1).

For the reasons set forth above, we find that Lokey's driver's license was validly revoked as of December 16, 2004. We therefore affirm that part of the trial court's order upholding the revocation of Lokey's driver's license, but reverse that part of the order finding that the effective date of that revocation was May 17, 2006.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 6, 2008.

*Christopher G. Nicholson*, for appellant.

*Thurbert E. Baker, Attorney General, Joseph J. Drolet, Senior Assistant Attorney General*, for appellee.