## A09A0076. EASON v. DOZIER.
(679 SE2d 89)

DOYLE, Judge.

Harry Lloyd Eason appeals from the Evans County Superior Court order affirming an administrative hearing officer's decision, which upheld the Georgia Department of Driver Services's ("DDS") September 11, 2007 revocation of Eason's driver's license based on his status as a habitual violator, pursuant to OCGA § 40-5-58 (b). Eason does not contest his status as a habitual violator, but challenges the date upon which the five-year revocation is deemed to have begun. Finding no reversible error, we affirm.

Because this appeal presents only questions of law, we perform a de novo review of the trial court's order.[1] The uncontested facts reflect that on March 30, 2003, Eason was involved in a motor vehicle incident, which resulted in charges for first degree vehicular homicide,[2] driving under the influence ("DUI"),[3] racing,[4] and failure to maintain lane.[5] Eason pleaded guilty and was convicted of those charges on October 7, 2004; he later surrendered his driver's license to the Department of Corrections when he entered the Bulloch County Correctional Facility in January 2005.

On March 21, 2007, Eason was notified by DDS that his license had been suspended indefinitely based on his 2004 convictions for racing and DUI. Eason was released from prison in May 2007 and completed the necessary requirements to have the suspension lifted from his license. Nevertheless, on August 28, 2007, DDS sent notification to Eason that as of September 11, 2007, he would be declared a habitual violator, pursuant to OCGA § 40-5-58, and he would not be eligible for reinstatement of his license for five years from the later of September 11, 2007, or the date upon which he

---

[1] See *Lokey v. Ga. Dept. of Driver Svcs.*, 291 Ga. App. 856 (663 SE2d 283) (2008).
[2] OCGA § 40-6-393 (a).
[3] OCGA § 40-6-391 (a).
[4] OCGA § 40-6-186 (a) (2), (b).
[5] OCGA § 40-6-48.

surrendered his license to DDS (September 20, 2007). The declaration was based on Eason's 2004 convictions for vehicular homicide, racing, and DUI.

Eason requested from DDS an administrative hearing regarding the September 11, 2007 revocation, and the administrative hearing officer upheld the revocation and calculation of eligibility for reinstatement (five years from September 20, 2007) contained in DDS's notification letter. Eason appealed the ruling to the Evans County Superior Court, which affirmed the administrative hearing officer.

Eason argues that he should have been declared a habitual violator in October 2004, at the time he pleaded guilty to the violations upon which his status was based, or alternatively, the court should have considered his license revoked as of the time he entered the correctional facility in January 2005. Eason contends that he is being penalized for the failure of the court of conviction to timely transmit records of his convictions to DDS, and he is being penalized because he could not surrender his license to DDS during the time he was incarcerated.

An individual declared a habitual violator must surrender his license to DDS after the declaration, which is made either (1) by DDS at the time its records reflect that the individual has been arrested and convicted of the requisite number and type of offenses; or (2) by a judge or prosecutor at sentencing for the last of those convictions.[6] An individual whose license has been revoked is not eligible for a new license until

> [f]ive years from the date on which the revoked license was surrendered to and received by the department pursuant to a person's having been declared a habitual violator under Code Section 40-5-58 or from the date on which [DDS] processed the citation or conviction, reduced by a period of time equal to that period of time which elapses between the date the person surrenders his driver's license to the court after conviction for the offense for which the person is declared a habitual violator and the date the department receives such license from the court. . . .[7]

Under OCGA § 40-5-53 (b), a court of conviction is required to transmit notification of applicable convictions to DDS within ten days of the date of conviction, but this Court has determined that a trial court's failure to timely transmit the records, which failure

---

[6] See OCGA § 40-5-58 (b).
[7] OCGA § 40-5-62 (a) (1).

results in delayed revocation of an individual's license, does not affect the validity of the revocation or the calculation of the five-year period.[8]

In *Lokey v. State*, we addressed a situation in which the appellant received notice from the court of conviction that he was declared a habitual offender on December 16, 2004 — the day his convictions were entered.[9] DDS argued that the notice given by the judge was not "official" because it was issued before DDS's records reflected the conviction, and thus, Lokey's revocation date (and the date from which the five-year period should have been calculated) actually was May 17, 2006, when DDS's records were updated and when it mailed him notification of his habitual violator status.[10] We determined that Lokey was properly notified by the court of conviction, and his date of revocation was therefore the earlier date of the two.[11]

In this case, however, Eason does not argue and the record does not reflect that the court of conviction notified Eason of his habitual violator status. Accordingly, even if Eason could have been declared a habitual violator as early as October 7, 2004, he was not declared a habitual violator until September 11, 2007. Therefore, under the plain language of the statute, Eason's license could not have been revoked based on his status as a habitual violator until the later date.[12] Moreover, while Eason's license may have been held by the Department of Corrections while he was incarcerated, his five-year revocation period may not be reduced by that time because Eason had not been declared a habitual violator by DDS.[13]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MAY 20, 2009 — ▮▮▮▮▮▮▮▮

*Murray, Harvey & Balbo, Lloyd D. Murray, Jonathan DeJesus*, for appellant.

*Thurbert E. Baker, Attorney General, Joseph J. Drolet, Senior*

---

[8] See OCGA § 40-5-53 (a); *Lokey*, 291 Ga. App. at 858-859 (1) (approving of *Hardison v. Orndorff*, 173 Ga. App. 630, 630-631 (327 SE2d 497) (1985) (upholding revocation of license after a three-year gap between the conviction and the report of the conviction to DDS)).

[9] See *Lokey*, 291 Ga. App. at 859 (2).

[10] See id. at 859-860 (2).

[11] See id.

[12] See OCGA § 40-5-58 (a), (b); see also *Lokey*, 291 Ga. App. at 858-859 (1); *Hardison*, 173 Ga. App. at 632.

[13] Compare with *Lokey*, 291 Ga. App. at 859-860 (2) (because Lokey was declared a habitual offender, the time between the court of conviction's declaration and DDS's record update was reduced from his five-year revocation period).

*Assistant Attorney General, Karla B. Dolby, Assistant Attorney General*, for appellee.