**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 11, 2021**

# In the Court of Appeals of Georgia

A20A1705. GEORGIA TRAILS & RENTALS, INC. v. ROGERS et al.

A20A1706. DURHAMTOWN PLANTATION SPORTSMAN'S RESORT, LLC. v. ROGERS et al.

A20A1707. TWO RIVERS IRREVOCABLE TRUST v. ROGERS et al.

A20A1708. MCCOMMONS v. ROGERS et al.

A20A1709. LASSEN v. ROGERS et al.

A20A1710. TWO RIVERS HOLDING COMPANY, INC. v. ROGERS.

BARNES, Presiding Judge.

Coleman Rogers ("Cole") was severely injured while participating in a motorbike competition. These related appeals arise from the jury verdict awarding Cole, individually, and his parents, individually and as his guardians, $15 million in damages resulting from his injuries. In Case Nos. A20A1705, A20A1708,

A20A1709, A20A1710, which were consolidated in the appellate briefing, the appellants – Georgia Trails and Rentals, Inc., Two Rivers Holding Company, Inc., Robert M. McCommons, and Joseph Lassen – contend that the trial court erred in denying their motion to disqualify the appellees' attorneys, in denying their motion for mistrial, in denying their motions for directed verdict and judgment notwithstanding the verdict ("JNOV"), and in submitting the special verdict form to the jury over appellants' objection. The appellants also contend that the damages award was excessive.

In Case Nos. A20A1706 and A20A1707, the appellants, Durhamtown Plantation Sportsman's Resort, LLC and Two Rivers Irrevocable Trust, through its trustee, Mike McCommons, challenge the trial court's denial of their directed verdict motions and motions JNOV and the special verdict form. The appellants in both appeals assert that the evidence adduced at trial failed to establish that they were the owners or occupiers of the recreational facility, that they had any legal or supervisory control of the facility, or that they had any legal duty to Cole and had breached such duty.

> On appeal from a jury verdict, we affirm if any evidence supports
> the jury's verdict, construing the evidence in the light most favorable to

2

the prevailing party. In order to prevail, [the appellants] must show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought. [The] standards of review for directed verdict and [JNOV] are the same.

(Citations and punctuation omitted.) *Norton v. Holcomb*, 299 Ga. App. 207, 208 (682 SE2d 336) (2009).

Applying that standard, the evidence reveals that on December 13, 2014, Cole, the then fifteen year old son of Cecilia and Barry Rogers, was participating in a motorbike race and collided with the metal edge of an exposed culvert pipe located approximately three feet from the side of the track. The racing track is situated on land occupied by an "off-road recreational facility," collectively referred to as "Durhamtown," and out of which operate the appellants, Georgia Trails and Rentals and Durhamtown Plantation Sportsman's Resort. In 2014 the land was owned by appellant Two Rivers Holding Company, and was later transferred to appellant Two Rivers Irrevocable Trust.

The 6,000 acre facility is collectively identified by its website as "Durhamtown.com," although there are, or were, several other entities utilizing some form of that moniker, including Durhamtown Off Road, Durhamtown Farms,

3

Durhamtown Trails and Rentals, and Durhamtown Sportsman's Plantation Resort.[1] Appellant McCommon is the CEO of each of the corporate entities, including the individual appellants in these appeals. The facility charges to use the 150 miles of trails and 15 motorbike tracks located on the property. There are also motorbike races held on the tracks. The construction of the track at issue was paid for by Durhamtown Plantation Sportsman's Resort in 2010, but the culvert that caused Cole's injury was added approximately a year later to address drainage issues.

Appellant Lassen coordinated the races, which included the "authority and responsibility to set the rules for the races," and through a fee arrangement paid "Durhamtown" "fifty percent of the [race] revenue to provide that location and maintain the [race] course." He described that to participate in a race, the rider "would fill out the registration, sign the waiver, . . . pay for the riding fee or the racing fee and the spectator fee depending on how many family members were with them."[2]

---

[1] McCommons testified that at some point in the past, before the accident, the facility was known as Durhamtown Plantation Resort, but that each business operating on the property was later established as a separate corporation.

[2] Notably however, there was no evidence of a waiver of liability executed on behalf of Cole the day of the race.

Lassen testified that his "person" who worked at the race entrance gate would check the rider to ensure that they had certain safety equipment, which included helmet straps, goggles, long sleeve shirts, and boots. According to Lassen, on the morning of the race, McCommons' "crew" would prepare the track and "till the dirt up, kind of rake it up . . . so it wasn't just a slick . . . hard packed surface." He testified that he rode the track the night before Cole's accident and did not notice that the culvert in the area Cole was injured was unguarded and unmarked, and that he did not notice it from his vantage point on the morning of the accident.

McCommons testified that he supervised the maintenance on the tracks, that maintenance was done before the tracks opened and after hours, and that "[a]nybody that works on my property outside on any track or trail is paid for through [Georgia] Tracks and Trails Companies." He explained that equipment owned by Durhamtown Farm would ready the track the morning of a race, that he would inspect the track, and after Lassen also inspected the track and gave him the "okay," he would authorize the use of the track.

Lauren Clifton, who was also identified as a "race coordinator" at the time of Cole's accident, testified that during that time she also worked in various capacities at Durhamtown. Clifton testified that her roles were "all blended together," and that

5

she may have been paid by Georgia Trails and Rentals, but knew that she was paid by "McCommons . . . [t]hrough one of his companies" and she was under his exclusive control as an employee on the day of Cole's accident. Clifton agreed that the "lodge," which was located on the property, was the "nerve center" for all of the activities involving the various businesses. On race day, Clifton shared the responsibility with Lassen of organizing the race, including ensuring that the racers were lined up and in the right place. On the day of Cole's accident Clifton was "doing scoring and registration" for the race.

Clifton's mother, Joni Roberts, worked as operations manager for Durhamtown and reported exclusively to McCommons. In that capacity, she handled complaints related to the facilities, including the racing tracks. She testified that McCommons would have known the most about the construction, upkeep and inspections of the track, and that Georgia Trails and Rentals employed the people who inspected the track before the races. Roberts testified that she was employed by Durhamtown Plantation Sportsman's Resort "the whole time," and that to her knowledge she was employed by the company at the time of the accident. She recalled that the property was once known as Durhamtown Plantation but, "that company . . . was no longer in business and changed to Durhamtown Off Road." Roberts was not sure if

6

Durhamtown Plantation Sportman's Resort had become Durhamtown Off Road Park. Roberts was responsible for investigating Cole's accident, including taking photographs of the accident scene and gathering paperwork.

On the day of the accident, Barry Rogers accompanied his son to Durhamtown for the race. Cole testified about the circumstances leading up to his collision with the open culvert.

> I was on lap two of the race. I was coming around on the left-hand side. There was individuals behind me riding and we kind of were all coming around the turn at the same time. So when I went around the turn, I went to the left side because they were holding the right side. And when I jumped over the jump, . . . when we come off the jump side, they had pushed . . . me over a little bit. And when I had landed on the left-hand side, I hit the ground and then it was just over with. . . . I was trying to get up and move and just couldn't.

When Cole did not reappear from the jump, his father noticed a race "flagger" waving frantically and "went directly to him." Cole was lying in the area near the culvert, he was conscious, but in "[p]retty bad shape." The father observed that Cole's "right leg was separated at the kneecap . . . and his leg was laying up beside him." Clifton and two EMTs arrived shortly afterward, and Clifton used her belt to create a tourniquet to tie off Cole's leg, which she testified was attached to his by only three tendons.

Although doctors were able to save his leg, he suffered extensive and permanent injuries.

McCommons testified that, as is their ordinary practice for the riders' safety, the metal culvert would have been covered and protected by tires and bales of hay. Roberts who, as part of her investigation, took pictures of the accident site on behalf of Durhamtown, also testified that there would have been tires in place to protect the riders from the metal culvert. Roberts testified that the pictures she took of the culvert that day after Cole's accident showed that the culvert was covered by hay and tires. However, photographs and video taken with a GoPro camera attached to Cole's helmet revealed that when Cole crashed the culvert was exposed and uncovered.

Durhamtown's expert on track design and safety testified that outdoor tracks commonly use culverts to drain and divert water from the track surface. He also testified that the culverts are sometimes covered, but that there are no national racing standards governing the construction of the Durhamtown track.[3] According to the expert, tires and hay bales are used for various reasons, including marking off the

---

[3] The expert testified that there are standards that relate to the certification of tracks by the American Motorcycle Association ("AMA"), and that to his knowledge, the Durhamtown track was not AMA certified. According to the expert, AMA certification is not required except for the "big national races."

boundaries of the tracks, and racers are supposed to stay within the boundaries. The expert testified that serious injuries are common in these types of races, that the racers wear special gear to protect themselves, and that, based on his observation of the Durhamtown track, the culvert pipes would have been visible to a rider. However, in observing the width of the Durhamtown track, he testified that tracks are of varying widths, but acknowledged that in building tracks, he would ordinarily double his track width so that the culvert would extend further out from the edge of the track. The expert testified that it was foreseeable that racers would run off the sides of the tracks, especially the least experienced racers.

In September 2016, Cole and his parents, acting individually and as guardians of Cole, filed a complaint alleging that the appellants' negligence and gross negligence were the proximate cause of the injuries and damages suffered in the motorbike accident.[4] The alleged negligent acts included failing to properly inspect

---

[4] The defendants were: Georgia Trails and Rentals, Inc.; Durhamtown Off Road Park, Inc.; Durhamtown Plantation Sportsman's Resort, LLC.; Durhamtown Farms, Inc., Durhamtown Pro Shop, Inc.; D. P. Riding and Rental, Inc.; Durhamtown Extreme Sports Outlet, Inc.; Bevelyn's Kitchen, Inc.; Two River's Holding Company, Inc.; "Two River's Irrevocable Trust" Mike McCommons Trustee U/A; New Road Off Road Rentals, LLC.; Robert M. McCommons; and Russell T. McCommons. The trial court later granted the appellees' motion to add additional defendants, including appellant, Lassen.

the track and warn of unsafe or dangerous conditions, failing to properly design, build, install, construct, maintain or supervise the track, failing to properly repair the track, failing to properly operate the track, and failing to train or supervise their agents, employees or instructors. After the trial court granted summary judgment to several defendants, the appellants proceeded to a jury trial, after which the appellees were awarded damages of approximately $15 million.[5] The appellants appeal the

[5] The final judgment provided as follows:

Cecilia Rogers and Barry Rogers, individually and as natural parents of Coleman Rogers, recovered compensatory damages as follows: From Georgia Trails and Rentals, Inc. the sum of $154,198.61; From Durhamtown Plantation Sportsman's Resort, LLC the sum of $154,198.60; From Two Rivers Holding Company, Inc. the sum of $154,198.61; From "Two Rivers Irrevocable Trust" Mike McCommons Trustee U/A the sum of $154,198.60; From Robert M. McCommons the sum of $110,141.86; and, From Joseph Lassen the sum of $7,342.79.

Coleman Rogers individually recovered compensatory damages as follows: From Georgia Trails and Rentals, Inc. the sum of $2,982,000.00; From Durhamtown Plantation Sportsman's Resort, the sum of $2,982,000.00; From Two Rivers Holding Company, Inc. the sum of $2,982,000.00; From "Two Rivers Irrevocable Trust" Mike McCommons Trustee U/A the sum of $2,982,000.00; From Robert M. McCommons the sum of $2,130,000.00, and From Joseph Lassen the sum of $142,000.00.

judgment and assert numerous claims of error, including the denial of their motions for directed verdict and JNOV.

Case Nos. A20A1705, A20A1708, A20A1709, A20A1710.

1. The appellants first contend that the trial court erred in denying their motion to disqualify the attorneys for Cole and his parents. The appellants assert that the attorneys' joint representation of Cole and his parents presented a potential conflict because Cole reached the age of majority during the pendency of the case and could then bring an action against his father for failure to warn him about the potential dangers of riding a motorbike. Thus, the appellants contend, the appellees' attorneys were prohibited from representing both Cole and his father in violation of Georgia Rules of Professional Conduct Rule ("Rule") 1.7 (a), (b), (c)[6] and Rule 1.9 (b).[7]

---

[6] Rule 1.7 provides in relevant:
(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

(b) If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former client gives informed consent,

11

We review the trial court's ruling on a motion to disqualify for an abuse of discretion. We approach motions to disqualify with caution due to the consequences that could result if the motion is granted, such as the inevitable delay of the proceedings and the unique hardship on the client

confirmed in writing, to the representation after:

(1) consultation with the lawyer, pursuant to Rule 1.0 (c);
(2) having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation; and
(3) having been given the opportunity to consult with independent counsel.

(c) Client informed consent is not permissible if the representation:

(1) is prohibited by law or these Rules;
(2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or
(3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.

[7] Rule 1.9 (b) provides:
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9 (c), that is material to the matter; unless the former client gives informed consent, confirmed in writing.

12

including the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney. Additionally, we are mindful of counsel using motions to disqualify as a dilatory tactic. Accordingly, we view disqualification as an extraordinary remedy that should be granted sparingly.

(Citations and punctuation omitted.) *Hodge v. URFA-Sexton*, 295 Ga. 136, 138-139 (1) (758 SE2d 314) (2014). Rather than mechanically applying rules for the disqualification of counsel, "we should look to the facts peculiar to each case in balancing the need to ensure ethical conduct on the part of lawyers appearing before the court and other social interests, which include the litigant's right to freely chosen counsel." (Citations and punctuation omitted.) *Cohen v. Rogers*, 338 Ga. App. 156, 169 (4) (b) (789 SE2d 352) (2016). "As the party seeking disqualification, [the appellants] had the burden to demonstrate to the superior court that disqualification was warranted[.]" *Cardinal Robotics v. Moody*, 287 Ga. 18, 21 (694 SE2d 346) (2010). The appellants have failed to do so.

First, even assuming without actually finding any impropriety in the joint representation by the appellees' attorneys, we conclude that there was evidence at the hearing on the motion to disqualify that Cole waived any conflict after being fully informed of the various risks. Moreover, as the trial court found in denying the

13

motion to disqualify, the appellants have presented no evidence of an actual conflict to support disqualification. The appellants repeatedly refer to "potential" conflicts in this circumstance, but our Supreme Court has held that absent an actual conflict of interest or actual impropriety, the trial court does not abuse its discretion in denying a motion to disqualify counsel. See *Blumenfeld v. Borenstein*, 247 Ga. 406, 409-410 (276 SE2d 607) (1981) (mere appearance of impropriety not based on actual conduct is an insufficient ground for disqualification). Likewise, as the appellees note, the father was included on the special verdict form for the allocation of fault. Consequently, there is no evidence of harm. See *Kamara v. Henson*, 340 Ga. App. 111, 116 (2) (796 SE2d 496) (2017) ("affirm[ing] the denial of [the appellant's] motion to disqualify Defense Counsel, because there is no actual conflict of interest or actual impropriety").[8] Thus, this enumeration fails.

2. The appellants next contend that the trial court erred in denying their motion for mistrial. During Cole's direct examination, he was questioned about the accommodations at his home after he was discharged from the hospital. When asked

---

[8] We note that it is difficult to distinguish the posited speculative conflict arising from the appellees' shared representation from that existing for the six appellants, who also share legal representation, and who could also potentially assert claims against each other.

to "[e]xplain the setup that had to [be] done at your house," Cole responded, "Through the insurance company, they provided us a bed." The appellants requested a mistrial because "you can't . . . mention . . . insurance." The trial court denied the motion, and instructed the jury to "put out of your mind any reference that has been made to insurance. It is not relevant in anything in this case and you are to absolutely set it aside."

"When ruling on a motion for mistrial, a trial court is "vested with broad discretion, and this Court will not disturb the ruling absent a manifest abuse of discretion." *Ga. Dept. of Corrections v. Couch*, 312 Ga. App. 544, 548 (2) (718 SE2d 875) (2011). See *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 843 (2) (244 SE2d 905) (1978) ("The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with.") (citations and punctuation omitted).

"[E]vidence of insurance will rarely be admissible in a personal injury tort action . . . even to counter a false impression created by other testimony. This is because evidence of collateral benefits is readily subject to misuse by a jury."

(Citations and punctuation omitted.) *Kelley v. Purcell*, 301 Ga. App. 88, 89-90 (686 SE2d 879) (2009).

In this case, the trial court issued a curative instruction immediately after the reference to medical insurance, and the appellants do not present any evidence of harm originating from Cole's brief reference to the medical insurance. See *Defusco v. Free*, 287 Ga. App. 313, 314 (651 SE2d 458) (2007) ("Where a motion for a mistrial is made on the ground of inadmissible evidence illegally placed before the jury, the corrective measure to be taken by the trial court is largely a matter of discretion, and where proper corrective measures are taken and there is no abuse of discretion, the refusal of the trial court to grant a mistrial is not error.")

3. The appellants next contend that the trial court erred in denying their motions for directed verdict and JNOV. The appellants argue that reversal of these rulings is appropriate because the appellees did not establish that the appellants were "'owners' or 'occupiers' at Durhamtown, or had "legal control" or "supervisory control" at the facility. The appellants further assert that the appellees did not allege "gross negligence" in the pre-trial order and thus were procedurally barred from raising that claim at trial, that the appellees failed to show which, if any, of the appellants was grossly negligent, and that, over its objection, the trial court erred in

16

presenting to the jury the special verdict form which impermissibly itemized Cole's proposed damages.

In considering a denial of a motion for a directed verdict or for JNOV, "we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict." *Park v. Nichols*, 307 Ga. App. 841, 845 (2) (706 SE2d 698) (2011). " If there is any evidence to support the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is error to grant the motion." *Mosley v. Warnock*, 282 Ga. 488, 488 (1) (651 SE2d 696) (2007). "[T]he jurors are the sole and exclusive judges of the weight and credit given the evidence. . . .[,and] the evidence must be construed to uphold the verdict even where the evidence is in conflict." (Citations and punctuation omitted.) *Henry v. Jones*, 237 Ga. App. 385, 385-386 (1) (515 SE2d 199) (1999). However, questions of law are reviewed de novo. *Eason v. Dozier*, 298 Ga. App. 65, 65 (679 SE2d 89) (2009).

a. The appellants argue that the appellees failed to establish that the appellants were the owners or occupiers of Durhamtown or that they had legal or supervisory control at the facility. However, as to these contentions, the mere allegation of error

17

is the entire substance of the appellant's arguments. The brief does not contain any evidence or authority in support of their arguments. See Court of Appeal Rules 25 (a) (1), (c) (2), (c) (2) (i), (c) (3); see also *Woods v. Hall*, 315 Ga. App. 93, 96 (726 SE2d 596) (2012) (holding that legal argument "requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation and punctuation omitted). Therefore, we conclude that the appellants have abandoned these arguments.

b. According to the appellants, the appellees failed to allege gross negligence in the consolidated pretrial order, and thus the appellees were procedurally barred from raising that claim at trial.

> The purpose of a pretrial order is to promote efficiency and to conserve judicial resources. A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues. Failure of a party to raise an issue in the pretrial order is not controlling where evidence is introduced on the issue without objection, the opposing party is not surprised, and the issue is litigated. Rather, the pretrial order is deemed modified to conform to the evidence that is admitted.

(Citations and punctuation omitted.) *Baumann v. Snider*, 243 Ga. App. 526, 528-529 (1) (532 SE2d 468) (2000). See *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 318 (1) (486 SE2d 851) (1997) ("The pretrial order has been likened to a rudder to

the ship of litigation, and is intended to limit the claims, contentions, defenses, and evidence that will be submitted to the jury, thereby narrowing the course of the action, and expediting its resolution. As such, it is an indispensable tool for the efficient disposition of civil litigation matters.") (citations and punctuation omitted.)

Contrary to the appellants' contention that the appellees failed to allege gross negligence in the consolidated pretrial order, our review of the record demonstrates that the appellees specifically alleged in the pretrial order that the appellants were "negligent and grossly negligent," in "several particulars." We find that the pretrial order fairly raised the issue of gross negligence, and thus appellants have failed to show that they were not accorded a fair opportunity to prepare a defense therefrom.

c. The appellants also argue that the trial court erred in denying their directed verdict and JNOV motions because the appellees failed to introduce evidence as to which, if any, of the appellants was grossly negligent.

In asserting this claim of error, the appellants provide nearly two pages of legal authority, but fail to provide a single reference to the facts underlying this appeal, apply the stated authority to the facts of this case, or make a cognizable argument regarding this contention. "[C]ogent legal analysis . . . is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Dixon v. MARTA*, 242 Ga.

19

App. 262, 266 (4) (529 SE2d 398) (2000) ("[A]ppellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument.") (citation and punctuation omitted).

Nevertheless, with respect to this contention, "gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care[.]" (Citation and punctuation omitted.) *Heard v. City of Villa Rica*, 306 Ga. App. 291, 294 (1) (701 SE2d 915) (2010). See *Patton v. Cumberland Corp.*, 347 Ga. App. 501, 505 (2) (819 SE2d 898) (2018) ("'Gross negligence' is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise.") (citations and punctuation omitted). See also OCGA § 51-1-4 ("In general, slight diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances. . . .The absence of such care is termed gross negligence."). And to that end, "[w]hen facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable men as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive

province of the jury." (Citation and punctuation omitted.) *Bostwick v. Flanders*, 171 Ga. App. 93, 94 (318 SE2d 801) (1984). See *Morgan v. Horton*, 308 Ga. App. 192, 198 (3) (707 SE2d 144) (2011) (same).

Here, the jury could have found that, in their various capacities, the appellants were grossly negligent in operating, maintaining, inspecting and failing to ensure the safety of the track before the race. There was also evidence that the injury was foreseeable given the culvert's proximity to the track, the likelihood that riders would veer off the track during the race, and the appellants' customary practice of surrounding or covering the culverts with tires and hay. Likewise, the jury was authorized to conclude to what degree each appellant was responsible for the culvert being uncovered. See OCGA § 51-12-33 (b), (c) (the trier of fact "shall[,] after a reduction of damages . . . apportion its award of damages among the persons who are liable according to the percentage fault of each person," and "shall consider the fault of all persons or entities who contributed to the alleged injury or damages").

Here, as there was evidence from which the jury could have found the appellants grossly negligent, they were authorized to then apportion damages according to the fault of each appellant. Thus, this enumeration is without merit.

4. The appellants contend that the trial court's final judgment should be reversed because Cole's damages were impermissibly itemized on the special verdict form. "Submission of a special verdict form is a matter within the sound discretion of the trial court and absent an abuse of discretion, the court's choice will not be overturned." *Southern Water Technologies v. Kile*, 224 Ga. App. 717, 719 (1) (481 SE2d 826) (1997).

Here, as to the itemized damages, the verdict form provided, in pertinent part as to Cole:

> We, the jury find in favor of Plaintiff Coleman Rogers and against the following Defendants . . . for the listed items of damages:
>
> _____ Past physical pain and suffering
>
> _____ Future physical pain and suffering,
>
> _____ Past mental pain and suffering, including anxiety, shock, worry
>
> _____ Future mental pain and suffering, including anxiety, shock, worry,
>
> _____ Diminished capacity to labor/work

22

_____ Future medical bills

According to the appellants, there is no statutory or legal authority for the trial court to itemize Cole's individual damages on the verdict form. The appellants acknowledge that neither the Georgia courts or its legislature has prohibited a trial court from doing so, but cite a Virginia case, *Johnson v. Smith*, 403 SE2d 685, 687-688 (Va. 1991) in support of their argument. In that case, the trial court was determined to have erred for failing to set aside as inadequate a jury special verdict in a wrongful death case. Id at 687. The Virginia Supreme Court questioned the special verdict in that the jury had awarded compensation to the widow in some separately specified categories but not for other categories. Id. While the opinion noted that Virginia law does not permit such special verdicts in negligence cases, the form of the verdict was not an assigned error on appeal. Id at 687-688.

Unlike Virginia, Georgia law does not prohibit special verdicts. See OCGA § 9-11-49 (a).[9] See also OCGA § 9-12-1.[10] "Matters of this nature are for the legislature

_____

[9] OCGA § 9-11-49 (a) provides:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical

23

to address, and the Georgia legislature has established the policy of this state. . . . It is not within the role of this Court to usurp the legislature's authority here." *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586, 594 (4) (631 SE2d 792) (2006) "[T]he role of the courts is to construe the law as it exists[.]" *Blotner v. Doreika*, 285 Ga. 481, 486 (678 SE2d 80) (2009) (J. Carley, concurring specially).

5. The appellants contend that the jury award of $15 million was excessive and inconsistent with the evidence presented at trial. We discern no reversible error. Cole

---

or other brief answer or may submit written forms of several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accordance with the judgment on the special verdict.

[10] "The verdict shall cover the issues made by the pleadings and shall be for the plaintiff or for the defendant." OCGA § 9-12-1.

was awarded $14.2 million in damages– $10.3 million for past and future physical and mental pain and suffering; $500,000 for diminished capacity to work; and $3.4 million for future medical bills.

> [A]n excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge, who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence. By its plain text, OCGA § 51-12-12 [11] pertains only to the discretion of the trial court. Under this framework, the trial court is authorized to review an award and to determine whether the damages awarded were within the range authorized by a preponderance of the evidence. . . . Appellate review, by contrast, involves a different analysis. While trial courts have discretionary powers to set aside verdicts based on an analysis of the evidence they observed as described in OCGA § 51-12-12, appellate review is confined to the question of whether the trial court abused its discretion in deciding the motion for new trial on this ground.

---

[11] Subsection (a) of the statute provides: "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." Subsection (b) provides, "the trial court may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court."

(Citations and punctuation omitted.) *Rockdale Hosp. v. Evans*, 306 Ga. 847, 851 (2) (a) (834 SE2d 77) (2019).

Moreover, when as here, a significant amount of an award is for pain and suffering damages, such award

> is governed by no other standard than the enlightened conscience of impartial jurors. And the defendant has a heavy burden under OCGA § 51-12-12 (a) to establish that such a damage award is excessive. In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. Therefore, for this Court to overturn the jury's verdict, it must be so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake by the jurors.

(Citations and punctuation omitted.) *AT Systems Southeast, Inc. v. Carnes*, 272 Ga. App. 671, 671 (1) (613 SE2d 150) (2005).

Here, the evidence shows that as a result of the accident, Cole's right leg was almost severed at the knee, and was only attached by three tendons. The impact caused multiple fractures to his femur, tibia, fibula and knee cap. Several ligaments in his leg, including his ACL, were torn; his leg suffered permanent nerve damage, and he will never be able to normally walk, run, jump or play sports. Large sections

26

of skin, muscle, soft tissue and cartilage were removed from his right leg, and pins, rods and screws were inserted during the six surgeries he had to repair the extensive damage to his leg.

Cole, who was twenty years old at the time of the trial, testified about experiencing "[a]bsolutely, terrible and excruciating pain" after his injury, and that he had gone back into the hospital weeks after his initial hospitalization because "[t]he pain [was] so bad that I . . . couldn't do it anymore. I was – I mean, I was mentally falling apart. I couldn't handle the pain and the excruciatingness of it for any longer." He also testified that he suffered from "terrible" depression and anxiety after the accident. Cole described the daily pain he felt as "achiness, soreness, and an occasional nerve will flare up and the pins and needles continue." Other than lingering pain, Cole testified that he continued to experience muscle spasms, trouble sleeping, nightmares, anxiety and flashbacks about the earlier excruciating pain. He further testified that his injury has placed limitations on his performance at his job. There was also evidence that as a result of the injury, Cole could continue to need additional medical care, and that he was at higher risk for knee replacement surgery and "developing significant arthritis." At the time of the trial, Cole's medical bills totaled $734,279.07.

Here, we cannot say that the trial court, who saw the witnesses and heard the testimony, abused its discretion in denying the motions for JNOV.

Case No. A20A1706.

Durhamtown Plantation Sportsman's Resort, LLC (hereinafter "DPS") asserts that the trial court erred in denying its motions for directed verdict and JNOV because the evidence did not establish that it owned, occupied or had supervisory or legal control of the racing track. It also contends that the trial court erred in denying its motions for directed verdict and JNOV because it had no legal duty to the appellees, had not breached that duty, and there was no evidence that its breach proximately caused the appellees' injuries. . Based on the same assertions regarding its legal status, DPS also contends that the trial court erred in submitting the special verdict form to the jury because DPS was therein apportioned fault. Following our review, we discern no reversible error.

6. According to DPS, the only evidence of its ownership were a 2010 check drawn on its account payable to the company that constructed the racetrack which occurred before the exposed metal culvert pipe was installed, and an accident report designating the accident site as "Durhamtown Plantation Resort" rather than

28

"Durhamtown Plantation Sportsman's Resort." DPS further argues that the evidence demonstrates that the employee who signed the report was not its employee.

As previously noted, this Court reviews the denial of both a motion for directed verdict and a motion for JNOV under the "any evidence" standard. *Crump v. McDonald*, 239 Ga. App. 647, 648 (1) (520 SE2d 283) (1999). Under this standard, we must construe the evidence in the light most favorable to the party who obtained a verdict, and if there is any evidence to support the verdict, we will not disturb it. *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997). Here, even though DPS was not the owner of the property, there was evidence from which the jury could have found that it exercised such control over the property to become an "occupier of land" within the meaning of OCGA § 51-3-1. The statute provides, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

From the evidence outlined above, the jury could have found that DPS had some responsibility for exercising ordinary care in keeping the premises safe for invitees such as Cole. There was evidence that DPS exercised some control over the

29

inspection, maintenance and safety of the racetrack through its employees and CEO, McCommons. Clifton testified that as race coordinator, she worked for DPS, and was charged with overseeing most of the racing related functions. The accident report was also signed by the DPS's employee, although the employee is no longer with the company. Throughout the trial, DPS was referred to generally as "Durhamtown," without objection.[12] DPS's contentions created factual issues for the jury to resolve, which it did. Our review, applying the "any evidence" standard, discerns no reversible error. See *Crump*, 239 Ga. App. at 648 (1) .

This same evidence also demonstrated that DPS had control over the racing activities.[13] Further, the evidence demonstrated that DPS's operations manager, Roberts, was involved in the overall operations of all the facilities, and was the person responsible for investigating Cole's accident and producing a report therefrom.

---

[12] Upon their motions, summary judgment was granted to Durhamtown Extreme Sports Outlet, Inc., Durhamtown Farms, Inc., Durhamtown Off Road Park, Inc., D. P. Riding and Rental, Inc., and Durhamtown Pro Shop, Inc. Appellant's motion for summary judgment was denied.

[13] McCommons acknowledged that the check to pay the company to build the track was issued by DPS, but thought that the money may have been from a loan from one of his other companies.

In establishing DPS's breach of that duty, in order for the company to be held liable for negligence,

> it is not necessary that [DPS] should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, [DPS] might have foreseen that some injury would result from [its] act or omission, and that consequences of a generally injurious nature might result.

(Citation and punctuation omitted.) *Towles v. Cox*, 181 Ga. App. 194, 197 (1) (351 SE2d 718) (1986). "It is true that where there are no conditions making the premises unusually dangerous, the law does not require the proprietor to provide a constant patrol." (Citation, punctuation and emphasis omitted.) Id. at 196 (1). But this case involves an uncovered exposed metal culvert located in close proximity to the edge of a racetrack, an entirely foreseeable danger "from the arrangement or use of the premises." (Citations and punctuation omitted.) *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 146 (598 SE2d 865) (2004).

Based on this evidence, the trial court did not err in denying the DPS's directed verdict and JNOV motions.

7. DPS next argues that the trial court erred in presenting the special verdict form to the jury because it apportioned fault to the appellant despite there being no evidence of its fault as to Cole's injuries.

> The statutory scheme [of OCGA § 51-12-33] is designed to apportion damages among all persons or entities who contributed to the alleged injury or damages — even persons who are not and could not be made parties to the lawsuit. A person will be considered to have contributed to the alleged injury where that person is shown to have breached a legal duty in the nature of a tort that is owed for the protection of the plaintiff, the breach of which is a proximate cause of his injury.

(Citations and punctuation omitted.) *Martin v. Six Flags Over Georgia II*, 301 Ga. 323, 337 (III) (801 SE2d 24) (2017).

Based on our conclusion in Division 6, we discern no error with DPS's inclusion on the verdict form. See *Johnson Street Properties v. Clure*, 302 Ga. 51, 58 (1) (b) (805 SE2d 60) (2017) ("fault" as used in OCGA § 51-12-33 extends to those who "have breached a legal duty in the nature of a tort that is owed for the protection of the plaintiff, the breach of which is a proximate cause of his injury") (citation and punctuation omitted).

Case No. A20A1707

Two Rivers Irrevocable Trust (hereinafter "Two Rivers"), through its trustee, McCommons, asserts that the trial court erred in denying its motions for directed verdict and JNOV because there was no evidence of its fault as related to Cole's injury, and that because there was no evidence of its fault, the special verdict form improperly included it for apportionment of fault.

8. Two Rivers denies any relationship as owner or occupier of Durhamtown, or that it exercises any legal or supervisory control at Durhamtown. It contends that there was no evidence that it had a legal duty to the appellees, breached the duty, or that the breach caused the appellees' injuries. We do not agree.

"The nondelegable duty to keep one's premises safe requires that the owner or occupier must use ordinary care to guard, cover, or protect the dangerous or defective portion of the premises[.]" (Citation, punctuation, and emphasis omitted.) *Towles*, 181 Ga. App. at 197 (1). Because this duty of exercising ordinary care is nondelegable, an owner will not be excused from liability for an injury occurring on his property unless he has delivered "full possession and complete control" of the premises to a third party. Id. at 196 (1).

McCommons testified that Durhamtown is owned by Two Rivers, and that the ownership extended to all of the land upon which the different activities, including

33

"off road activities,"were held. The ownership was confirmed by the appellant's admission in the pretrial order which stated:

> "Two Rivers Irrevocable Trust" Mike McCommons Trustee U/A . . . presently has *sole* and *exclusive* title and ownership to the real property and/or premises at Durhamtown, *and* since January 2012– more than two (2) years *prior* to the subject incident– has held *sole* and *exclusive* title and ownership to the real property and/or premises at Durhamtown[.] (Emphasis in original)

As we have held, "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Hill v. Bd. of Regents of the Univ. System of Ga.*, 351 Ga. App. 455, 465-466 (3) (829 SE2d 193) (2019). There is no indication that Two Rivers later amended the admission, and thus the admission as to the ownership of Durhamtown is binding on the appellant.

The evidence also contravenes Two Rivers' assertion that it did not have control over the property. As the evidence demonstrated, McCommon, the trustee, controlled and directed much of the maintenance, inspection and decision-making concerning Durhamtown. He also was involved in the construction of the racetrack and, the placement of the culvert under the track. He further testified that the culverts

34

were covered by tires and hay to protect the riders from injury. There was also testimony that he was the person who knew the most about the operations, conditions and upkeep of the tracks. And McCommons testified that he inspected the track the morning of Cole's accident. Thus, there was some evidence of not only Two Rivers' legal control as the owner of the property, but also supervisory control of the property through the actions of McCommons, its trustee.

Thus, this enumeration fails.

9. Contrary to Two Rivers' contention, there was some evidence from which the jury could find that it breached its duty to keep the property safe for invitees, such as Cole. There was evidence presented that the exposed metal culvert created a dangerous hazard, that it was foreseeable that riders commonly veer off the track and could be seriously hurt by an exposed culvert located near the track, that Two Rivers, through McCommons, its trustee, was responsible for the maintenance and inspection of the track, that McCommons left the culvert uncovered rather than surrounding it with tires or hay as was customarily done, and that the breach resulted in Cole's injury and the resulting damages suffered by the appellees. As this Court has explained, "[t]he duty is defined by the law; the *breach* of that duty is determined by the particular facts. This is usually a question to be referred to the jury, and should

always be so referred, unless the allegations (or evidence) show beyond controversy that there was no such breach of duty." (Citation and punctuation omitted; emphasis supplied.) *Leo v. Waffle House*, 298 Ga. App. 838, 840 (1) (681 SE2d 258) (2009).

As previously noted, upon motion for directed verdict or JNOV, and in determining whether any conflict in the evidence exists, this Court construes the evidence most favorably to the party opposing the motion and applies the "any evidence" standard in our review. See *Park v. Nichols*, 307 Ga. App. 841, 845 (2) (706 SE2d 698) (2011). Applying these principles, the jury was authorized to find that Two Rivers breached its duty to the appellees, and that such breach caused appellees' damages. Thus, we discern no reversible error in the trial court's denial of the appellant's motions for directed verdict and JNOV.

10. Likewise, as there was evidence from which the jury could find Two Rivers at fault for the accident, its inclusion on the special verdict form for the apportionment of fault was not improper. See *Six Flags Over Ga. II*, 301 Ga. at 337 (III).

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*